SWEENEY ET AL. *v.* SWEENEY
[No. 16,308. Filed February 13, 1940.]

*Walker, Hilleary & Cox, George E. Osborn,* and *Walter F. Wood,* for appellants.

*Herbert R. Criss* and *Charles H. Bedwell,* for appellee.

DUDINE, J.—This is an action which was instituted by appellee, Gretchen Sweeney against appellants Michael M. Sweeney and Thomas A. Sweeney and against Margaret Sweeney to quiet appellee's alleged equitable title to certain real estate.

The issues were formed by a second amended complaint in one paragraph and an answer in general denial filed by appellants. Margaret Sweeney filed a disclaimer and judgment for costs was entered in her favor. None of the pleadings are challenged upon appeal. It would serve no good purpose to discuss any of them in this opinion.

The issues having been closed the cause was submitted to a jury for trial. The jury found for appellee, plaintiff below, that she was the equitable owner of the real estate in question and that appellant's claimed an interest therein adverse to appellee's rights which claim was unfounded and a cloud upon appellee's title, and the jury further found that appellee was entitled to have her title to said real estate quieted as against the claim of appellants. Judgment was rendered upon the verdict in accordance therewith.

Appellants duly filed a joint motion for new trial which motion was overruled and that ruling of the court is assigned as the sole error upon appeal. The grounds for new trial which are presented are: 1. The verdict is not sustained by sufficient evidence; 2. The verdict is contrary to law; 3. Claimed error in sustaining objections of appellee to certain questions asked of appellee while she was testifying as a witness on cross-examination; 4. Claimed error in giving instruction No. 16 to the jury; 5. Claimed error in refusing to give to the jury each of several instructions tendered by appellants.

The evidence shows that on October 15, 1924, said Margaret Sweeney owned "Lot No. 37 in Richard

Dunning's subdivision.... in the city of Terre Haute, which lot is bounded on the north by Third Avenue, on the east by Sixth and One-half Street and on the south by an alley. At that time, for several years prior thereto and since that date a double house stood on the north end of said lot facing Third Avenue and a small four room house stood on the south end of the lot facing Sixth and One-half Street. On that date appellee, Gretchen Sweeney and Patrick Sweeney (now deceased), son of said Margaret Sweeney, were married. In the evening of their wedding day Gretchen and Patrick went to his mother's home for a wedding supper. The mother lived about a half block from said Lot No. 37. During the evening the mother called Patrick and Gretchen out into the kitchen, showed Gretchen a bank book and said "Here is what Pat helped me save and which helped me buy that corner (meaning said Lot No. 37). I am going to give you and Pat the little house on the alley. You and Pat go there and make it your home and put whatever improvements you want to on it and paint and plaster the house and it will be yours. You will have to pay the taxes." Patrick and Gretchen moved into the "little house on the alley" on their wedding day. They lived there continuously until August 24, 1934, when Patrick died. Patrick made substantial permanent improvements on the house during this period of time. Gretchen continued to live in the house after Patrick's death until the trial of this cause. Patrick and Gretchen paid all taxes due on said Lot No. 37 until this suit was instituted.

On April 22, 1937, about three years after Patrick's death, the mother executed and delivered to appellants, Michael M. Sweeney and Thomas A. Sweeney, her sons, a warranty deed for said Lot No. 37.

From October 15, 1924, when Patrick and Gretchen

moved into the "little house on the alley" until the date of the trial of this cause, appellants lived with their mother in her home which, as we have previously stated, is located about a half block from said Lot No. 37, except that Michael lived in other cities for short periods of time. Appellants knew of the improvements being made by Patrick in and about the "little house on the alley"; in fact they were "back and forth two or three times a week while these repairs were being made." There is evidence in the record which shows, or from which inferences could reasonably have been drawn by the jury to show, that long before appellants acquired said deed from their mother they knew that she had agreed to give the "little house on the alley" to Patrick and Gretchen if they made it their home and complied with the conditions fixed by her in her proposal orally made to them on their wedding day; there is also evidence in the record which would sustain the finding that appellants knew, before they acquired said deed, that Patrick and Gretchen had complied with said conditions. After the deed was made and delivered appellants notified Gretchen that "if she continued to keep possession of the property (we) would expect some rent beginning May 1st (eight days after the date of the deed)." Gretchen informed the appellants that she would not surrender possession and that she would not pay rent. Thereafter she instituted this action to quiet her alleged title in the "little house on the alley."

Appellants contend upon appeal that the verdict of the jury is not sustained by sufficient evidence because there is no evidence in the record which shows by metes and bounds the description of the real estate which the mother allegedly gave to Patrick and

Gretchen. The same law question is presented under the assigned cause for new trial that the verdict is contrary to law.

It is true that the evidence shows that the mother referred to the premises only as the "little house on the alley" and that the evidence fails to show that the metes and bounds of the premises were definitely fixed.

Appellants contend further as follows: "Where a party claims to have acquired title to a certain part of a larger piece of real estate, such party has the burden of proving a specific description of his part of such larger piece of real estate in order to maintain title." They cite *Baldwin et al.* v. *Kerlin et al.* (1874), 46 Ind. 426; *Shoemaker* v. *McMonigle* (1882), 86 Ind. 421; *College Corner and Richmond Gravel Road Company* v. *Moss et al.* (1883), 92 Ind. 119; *Jones* v. *Mount et al.* (1902), 30 Ind. App. 59, 63 N. E. 798, and other cases all of which support such proposition of law.

This is an action to quiet an alleged *equitable* title to real estate. In none of the cases cited was such a proceeding involved.

"While . . . mere disputes respecting the title to land are seldom cognizable in a court of equity, the contending parties being ordinarily relegated to their action at law, a purely equitable title cannot be maintained in a court of law, and, for that reason, its vindication and all relief respecting the same must be sought in a court of equity." 10 R. C. L. p. 348.

Courts of equity have jurisdiction to determine the boundaries of land where a confusion of boundaries exists provided some equity has arisen from the conduct or the relation of the parties, which, in justice to the parties, demands that courts of equity assume such jurisdiction. 10 R. C. L. p. 348 supra. See also Pomeroy, Equity Jurisprudence, 2nd

Ed. Sec. 1384; Story Equity Jurisprudence, 14th Ed. Sec. 836; 19 American Jurisprudence, p. 143; 8 American Jurisprudence, p. 807.

It is clear that appellee's claimed title was a purely equitable title and that vindication of it had to be sought in equity. Her remedy would not have been complete if the court had assumed jurisdiction solely to determine whether or not she had an equitable title because if the court had merely determined that she had such equitable title the boundry of the premises owned by her would still have been in confusion and her title could therefore not have been effectively quieted.

We think the evidence shows a situation from which an equity has arisen, in favor of appellee, which, in justice to appellee *and to appellants,* demanded that the court not only assume jurisdiction to determine whether or not appellee held equitable title to part of said Lot 37, but also demanded that the court assume jurisdiction to determine the boundary lines of the premises to which appellee held such title, if any, and to quiet such title, if any.

As we have previously said, appellee's title was a purely equitable title and such title could not be vindicated in an action at law, and for that reason its vindication and all relief respecting the same had to be sought in a court of equity, and therefore the rule of law requiring descriptions of real estate to be definite in suits to maintain title, which rule of law is relied upon by appellants as aforesaid, is not applicable in the instant case or in cases of a similar nature.

It should be noted that appellants do not contend, in their main brief, that the jury by its verdict gave appellee a larger piece of real estate than she

was entitled to under the evidence; in fact such question could not have been properly presented under the assigned grounds for new trial. Appellants do make such contention in their reply brief but such questions not being duly presented we refrain from discussing them.

It is sufficient to say with reference to claimed errors in sustaining objections of appellee to questions asked appellee upon cross-examination, that the questions objected to had reference to a pre-trial examination of appellee, which had not been referred to in her direct examination and which was not introduced in evidence. On authority of *L. & N. Railway and Lighting Company* v. *Beck* (1925), 196 Ind. 238, 145 N. E. 886, 147 N. E. 776, we hold that the court did not commit error in sustaining objections to said questions. Said questions did not relate to the credibility of appellee as a witness, as appellants contend.

Instruction sixteen (16) given the jury set out a form of verdict and told the jury "if your (their) verdict should be for the plaintiff in this cause" they (the jury) should adopt the form set out in said instruction, which form included an exact copy of the description of the real estate which was set out in the complaint and title to which appellee sought to quiet. Appellants contend that since there was a total failure of proof in regard to this description, it necessarily follows that the instruction was erroneous.

In instruction two (2) the court informed the jury that the plaintiff had the burden of proving all of the material allegations of her complaint. Instruction seven (7) contained a description of the real estate as set out in the complaint, and informed the jury

that in order to find for the plaintiff it must be shown by a preponderance of the evidence, in addition to other facts, that Margaret Sweeney told appellee and her husband, Patrick, that she would give them *"the above described real estate."* Instruction sixteen (16), when considered together with all the other instructions as a whole, and particularly when considered with instructions two (2) and seven (7) given to the jury, is in effect an instruction as to form of verdict only; it did not invade the province of the jury and it was a proper instruction.

Appellants complain of the court's refusal to give each of instructions numbered 3, 4, 5, 7, 8, 9, 10, 11, 13, 15, 16, 17 and 23 tendered by appellants. The court did not err in refusing to give any of said instructions numbered 7, 8, 13 and 16 because each of said instructions is merely an abstract statement of law. See *Snyder* v. *Stanley* (1922), 77 Ind. App. 253, 133 N. E. 512. The propositions of law embodied in each of said instructions numbered 3, 4, 5, 9, 10, 11, 15, 16, 17 and 23 are sufficiently covered in the instructions which were given to the jury. Furthermore the record does not show that appellants were harmed by the refusal of the court to give any of said instructions. See *Indiana Pipe Line Company* v. *Christensen* (1924), 195 Ind. 106, p. 123, 143 N. E. 596.

No reversible error having been shown the judgment is affirmed.