KEMPF *v.* HIMSEL, ADMINISTRATOR.

[No. 18,049. Filed April 13, 1951. Rehearing denied May 25, 1951. Transfer denied July 18, 1951.]

490

492.

*Emison & Emison,* of Vincennes; *William F. Dudine,* of Jasper; and *Gray & Waddle,* of Petersburg, for appellant.

*Horace M. Kean,* of Jasper; *Hastings, Allen & Hastings,* of Washington; and *Shake & Shake,* of Vincennes, for appellee.

MARTIN, J.—This is an appeal from a judgment in favor of. the appellee in an action by the administrator for damages for the alleged wrongful death of Edward J. Himsel, said wrongful death being the result of the alleged negligence of the appellant.

The cause was tried by a jury on the issues formed by the appellee's complaint and the appellant's answer. The jury returned a verdict in favor of the appellee and against the appellant, awarding damages in the amount of $10,000.00 to the appellee.

The error assigned for reversal is that the court erred in overruling appellant's motion for a new trial.

The grounds and reasons assigned in appellant's motion for a new trial are that the court erred in refusing to direct the jury to return a verdict for the appellant in this case, at the conclusion of appellee's evidence. The appellant requested the court, at the conclusion of all of the evidence, to instruct the jury to return a verdict for the appellant in this case, the court refusing to give this instruction and overruling the appellant's motion for a directed verdict.

The appellant also assigned as a ground for a new trial that the verdict of the jury is not sustained by

sufficient evidence and that the verdict of the jury is contrary to law.

In addition to these reasons and grounds contained in the motion for a new trial, and not waived by the appellant's brief, are the alleged errors of the trial court in refusing to give appellant's tendered instructions 1, 2, 4, 5, 6, 8, 10, 11 and 12.

The following acts of negligence were alleged in appellee's complaint:

> "That the aforesaid careless and negligent acts, and each of them, of the defendant herein, were as follows, to-wit:
>
> "(a) That the said motor vehicle was driven and operated at said time and place at a speed which was greater than was reasonable and prudent, taking into consideration the present and potential hazards then and there existing, to-wit: the width of the highway, which was but about 20 feet, the number of persons using the said highway at that place and at that time, the curve in the said highway at that place, and at a speed which was dangerous to life and limb of persons using said highway, including plaintiff's decedent, said speed being 55 miles per hour.
>
> "(c) That the said defendant failed and neglected to maintain sufficient control over his said motor vehicle and keep said motor vehicle on his right side of the said highway at that time and place, and did permit his said motor vehicle to cross to his left side of the said highway and to run off the paved portion of the said highway on his left side and onto the berm on the left side of the said highway at the place then occupied by this plaintiff's decedent, as aforesaid."

The appellant contends that the court erred in overruling its motion for a directed verdict, at the conclusion of plaintiff's evidence and after the plaintiff rested, and that the court erred in refusing to give to the jury defendant's peremptory instruction I, at the

conclusion of plaintiff's evidence and after the plaintiff had rested.

By the verdict the jury found that the appellant was negligent, which was the proximate cause of the death of the decedent. The appellant contends that this finding was not sustained by sufficient evidence and was contrary to law.

If the facts are in dispute, or if reasonable men may draw a different conclusion from undisputed facts, the question of negligence is one for the jury; but if the facts are not in dispute, or if the facts most favorable to the proponent, together with all reasonable and logical inferences that may be drawn therefrom be assumed as true, and reasonable men could draw only one inference from such assumed facts and inferences, then the question of negligence becomes one of law for the court. *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629; *Tabor* v. *Continental Baking Co.* (1941), 110 Ind. App. 633, 641, 38 N. E. 2d 257; *Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1939), 216 Ind. 545, 24 N. E. 2d 284; *Indianapolis & Cincinnati Traction Co.* v. *Roach* (1922), 192 Ind. 384, 135 N. E. 334; *Indiana Ins. Co.* v. *Handlon* (1940), 216 Ind. 442, 24 N. E. 2d 1003; *Northwestern Transit, Inc.* v. *Wagner* (1945), 223 Ind. 447, 61 N. E. 2d 591; *Dieckman* v. *Louisville, etc., Traction Co.* (1909), 46 Ind. App. 11, 89 N. E. 909, 91 N. E. 179; 65 C. J. S., Negligence, § 252; 5 Am. Jur. 874, § 668.

Likewise, the question of proximate cause is generally a question for the jury to determine, but it may become a question of law for the court under the same circumstances that negligence becomes a question of law. *Gamble* v. *Lewis*, *supra; Tabor* v. *Continental Baking Co., supra; Anti-Mite Engineering Co.* v. *Peerman* (1943), 113 Ind.

App. 280, 46 N. E. 2d 262; *Cleveland, etc., R. Co.* v. *Powers* (1909), 173 Ind. 105, 88 N. E. 1073, 89 N. E. 485; *Haskell & Barker Car Co.* v. *Przezdziankowski* (1908), 170 Ind. 1, 15, 83 N. E. 626; *Jones* v. *Cary* (1941), 219 Ind. 268, 37 N. E. 2d 944; 5 Am. Jur. 875, § 669; 65 C. J. S., Negligence, § 265.

In passing upon a motion for a directed verdict in a negligence action, the court is merely called upon to determine if there is some evidence of negligence on the part of the defendant which the jury is entitled to consider in deciding that issue, or if the undisputed evidence discloses that plaintiff was guilty of negligence that proximately contributed to his injury or death. *Baltimore & Ohio R. Co.* v. *Reyher, Admx., supra.*

On appeal, when the sufficiency of the evidence is questioned, we do not weigh the evidence, but we examine the record to see if there is any evidence, or any reasonable or logical inference which may be drawn from the evidence, which if believed by the jury would sustain the verdict. *Gamble* v. *Lewis, supra; Butterfield* v. *Trittipo* (1879), 67 Ind. 338, 342; *Indiana Ins. Co.* v. *Handlon, supra.*

The record, when considered most favorable to the appellee and with reasonable inference against the appellant, discloses that on December 24, 1946, State Road 56 ran from Jasper, Indiana, through the edge of Haysville, Indiana, and on to French Lick, Indiana. It ran generally north from Jasper, curved to the east as it approached the south edge of Haysville, so that Haysville was on the northwest of the curve, as the road turned from the north to east and on to French Lick. At that point State Road 56 was paved and was 19 feet 2 inches in width.

A blacktop road 18 feet in width running in a generally east and west direction and leading into

Haysville intersected with State Road 56 so as to form a Y. The north prong of the Y, for one approaching the intersection on State Road 56 from the east, was the blacktop road going straight ahead into Haysville, and the south prong of the Y was Road 56 as it curved to the south and on to Jasper. East of the intersection of State Road 56 and the blacktop road, and on the north side of the State Road was located the parsonage of Christ's Evangelical Lutheran Church. Immediately east of the parsonage and on the same side of the State Road was the church itself. Immediately east of the church and on the same north side of the State Road was the church cemetery.

Between the intersection of the two roads and the parsonage, at a point 207 feet east of the intersection of the two roads and 134 feet west of the line dividing the church and the parsonage, was a concrete culvert over an open ditch running along the north side of the State Highway. The culvert was 11 feet 6 inches from the north edge of the pavement on the State Road and the bottom of the open ditch at the culvert was 2 feet 7 inches below the level of the Highway.

On the south side of the pavement, opposite the culvert, was a brick building then occupied by the Meyer Body Company.

Mrs. Margaret Himsel, mother of the decedent, lived on the north side of the blacktop road leading into Haysville, approximately 264 feet west of the point where that road entered State Road 56 and 471 feet west of the concrete culvert along the north side of State Road 56 above referred to.

On the 24th day of December, 1946, the decedent, Edward J. Himsel, left his farm home located about three miles southeast of Haysville, Indiana, about 5:00 or 5:30 p. m., accompanied by his wife, his daughter and his two sons. They drove to Christ's Evangelical

Lutheran Church, located at the east edge of Haysville, Indiana. His wife and daughter got out of the car and went to the church where there was to be a children's program about 6:30 that evening. The decedent, with his two sons, went to the home of the decedent's mother, Margaret Himsel, to visit until time for the church service to start.

At about 6:12 p. m., that evening, the decedent left his mother's home alone to go to the church. At the time, he was 52 years of age, was 5 feet 10 inches tall, weighed 215 pounds, and was in good health. As he left his mother's home, he was smoking his pipe, had his glasses with him, and the coat he wore was not stained or torn. At the time it was completely dark and gloomy and had previously been raining.

The decedent did not appear at the church for the services, and after the church services were over the decedent's two sons searched for him in Haysville and about the church properties twice. Finally, about 9:00 p. m., the two sons found the body in the open ditch by the concrete culvert along State Road 56. The decedent's head and face were against the culvert head, stomach down, and the rest of the body was stretched out in the ditch. There was blood all over the decedent, on the ground and on the culvert. His skull was fractured, which had caused his death. There was a burn-like scar about the size of a hand on his right hip, and a bruise between the knee and ankle of his right leg. The decedent's pipe was found approximately 25 feet from the ditch in which the body was found. His glasses were found in the parsonage yard approximately 25 feet northeast of the body. The cloth was broken through his suit he wore. The decedent's coat was offered and admitted into evidence.

Visible tire tracks were found where a tire had left the road on the curve west of the body and had run

along the shoulder approximately 2 feet off the pavement to a point 8 or 10 feet east of where the body lay. The tracks then went back on the pavement, over the center line approximately 2 feet, then back to the north side of the pavement and almost off, then to the south again and off the south side of the pavement and back to the north side of the pavement where another car was struck. These tracks covered a distance of approximately 300 feet and were visible.

At one point on the shoulder where the earth was soft, the tire tracks had cut in the dirt an inch or inch and a half, and a State Policeman placed a board over this particular portion of the tracks to preserve the same for the purpose of identification. Glass was found along the ditch bank and road berm, around the body and along the road shoulder.

At about 6:15 or 6:30 that evening, a witness and her husband parked their car in front of the Meyer Body Company building to attend the church. Before crossing the highway, this witness saw a "red glow, like it was from somebody's pipe" to her left to the west and along the north side of the blacktop. It was too dark to see anybody walking. She and her husband then crossed the road to the north side of State Road 56 and turned east toward the church. As they walked along the north shoulder of the road, both she and her husband heard a loud noise which to him sounded like a thud to his rear. Both saw lights from a car approaching from their rear and the car was crossing and zig-zagging back and forth across the pavement. Both heard the roar of its tires and both jumped away from the highway to keep from being hit and the husband estimated the speed of the automobile at 45 to 50 miles per hour. After passing the witnesses the car angled on the pavement until it hit Clifford Hoffman's car in the cemetery beyond the church.

Another witness was walking along the edge of the pavement on the north side of State Road 56, going from Haysville to the church, about 6:15 that evening. He saw the husband and wife whose testimony is referred to in the preceding paragraph. He heard a car approaching from his rear, coming up around the curve heading east in the direction of French Lick. As it approached him he heard a dull thump. He saw the car leaving the pavement before it passed him and he jumped off the road to avoid being hit. After the car passed him it went to the south side of the road and back to the north side of the road and struck another car belonging to Clifford Hoffman down by the cemetery. The witness estimated the speed of the car as it approached and passed him to be 50 miles per hour, and the tires made "a kind of squall like a car does when you kind of wiggle them too fast when going at a fast speed," and as the car approached him on the highway. The driver of the car that passed him was the defendant, Emil Kempf. When the witness asked the defendant what he was trying to do, if he was trying to scare somebody, Kempf said, "No, I had a blowout."

The Hoffman car, which was struck by the defendant's car, was parked on the east end of the parking lot in front of the church, on the north side of Road 56, headed toward the church, with the back out towards the highway. The back end of the Hoffman car had been struck, the cemetery fence had been knocked down and the Kempf car was stopped 10 to 15 feet over the fence line and inside the cemetery. Kempf seemed very nervous and excited and in an awful hurry to get going. He said he had had a blowout and changed the left front tire of his car. His brother and sister were in the car with him and after the tire was changed he drove the car away.

The State Policeman, on the same evening, proceeded to Dubois, Indiana, where he found the defendant in the home of his parents. At first the defendant denied having been in or through Haysville. The defendant's sister came in the room and asked, "Did we hit that man?" At the time the defendant was under the influence of intoxicating liquor. The State Policeman examined the car which the defendant had been driving and which belonged to his father, and finally the defendant, with his family, returned to the scene of the accident.

When the Kempf car was examined that evening the left front fender had a pretty heavy dent in it, the door post between the windshield and the ventilator glass had a heavy dent in it; the windshild was kind of shattered; the ventilator glass had a dent in it and there was a piece out of the ventilator glass; and the back glass of the car was almost completely out. There were some bits of glass in the back seat of the car.

The State Policeman fitted broken pieces of the glass that had been found beside the body into the broken-out places, both into the left ventilator glass in the door and also into one of the other glasses. A piece of glass so found fit into the ventilator glass of the Kempf car "perfectly" with the exception of a few little splinters. One of the pieces of safety glass, triangular in shape, which was found three feet south of the body of the decedent and which was identified in the trial, fit into a broken place in the left ventilator of the defendant's car.

When the Kempf car was returned to the scene of the accident that night the spare tire was flat. There is a difference in the type of marking upon a highway that a flat tire will make and that which an inflated tire will make. The skid or burn of an inflated tire will show only the width of the tire and there will

be visible tread, but the flat tire will not show tread and will show blotches where the flat tire is gathered under the wheel and it will jump and bump and spread out as much as a foot and a half in width. The State Policeman testified that in his opinion the tire marks at the scene were not made by a flat tire.

When the Kempf car was returned to the scene of the accident the tires on the car were compared with the tracks which had been covered by the board. There was "no question" but what the left rear tire compared with the tracks—"it showed the tire plain"—but the left front tire did not compare with the tracks. The spare tire was then checked and it did compare with the other track on the ground.

On that same evening the State Policeman asked the defendant "why he hit the man," and the defendant replied "he didn't think he hit the man, he thought he hit the sign post and no damage done; thought he missed the man."

The Kempf car was stored in the Meyer Body Shop under lock that night. The following morning the State Policeman returned to the scene, examined the car again and took the various photographs which were introduced into evidence. That morning the State Policeman also removed the flat spare tire for the purpose of having it examined.

Two tire experts examined the tire the same day. There was not a hole through the casing, but there was a break two inches long on the inside of the casing. It was the opinion of both of the experts that the break which the tire had was caused from a sharp object. The tire had not blown out. If the tire had been run 300 feet while flat the tire would have been mutilated.

The defendant was called as a witness by the plaintiff. After being cross-examined by his own attorneys he was excused from the witness stand. Later in the trial he was recalled by the defendant for the purpose of an additional question on cross-examination and was asked: "The night of December 24, 1946, when you drove your father's motor vehicle in Dubois County, State of Indiana, I will ask you in the driving and operating of that motor vehicle if your motor struck Edward J. Himsel?" to which the defendant answered "I did not."

There is a conflict in the evidence. There is circumstantial evidence that the car which appellant was driving struck the deceased, thereby resulting in his death. On the other hand, the appellant denied that the car which he was driving struck the deceased, therefore, the evidence is in dispute.

Negligence and proximate cause being a question of fact, these questions were for the jury under proper instructions.

The court did not err in refusing to give defendant's instruction I and in overruling appellant's motion for a directed verdict.

Burns' 1940 Replacement, § 47-2010, reads as follows:

"Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway except as follows:

"1. When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;

"2. When the right half of a roadway is closed to traffic while under construction or repair;

"3. Upon a roadway divided into three (3) marked lanes for traffic under the rules applicable thereon; or

"4. Upon a roadway designated and sign-posted for one-way traffic."

When the appellant drove to the left of the center of State Road 56 it was *prima facie* evidence of negligence, and if no reasonable excuse or justification for so driving is shown by the evidence, and if such act is a proximate cause of an injury or death to one who is free of contributory negligence, such operator is liable for the injury or death. *Lorber* v. *Peoples Motor Coach Co.* (1929), 89 Ind. App. 139, 164 N. E. 859; 172 N. E. 526; *Gamble* v. *Lewis, supra.*

In the case of *Jones* v. *Cary* (1941), 219 Ind. 268, 284, 37 N. E. 2d 944, the court said:

"While the violation of such a statutory regulation does not conclusively establish negligence, it is *prima facie* evidence of negligence and places on the opposing party the duty of producing evidence to show a valid excuse for such violation."

The appellant did not offer any evidence in the trial of his case.

There is no evidence in the record, or any reasonable inference from any evidence which would excuse such conduct, and, therefore, as a matter of law we must hold that the appellant was guilty of negligence. From the facts in the record a reasonable inference could be drawn that such negligence was the proximate cause of the death of the deceased, hence the verdict was sustained by sufficient evidence and was not contrary to law.

The appellant predicates error upon the refusal of the court to give his tendered instruction 1. By this instruction the appellant sought to have the trial court tell the jury that the complaint could not be considered as evidence in the cause and that no inference or pre-

sumption of negligence arose from the filing of said complaint.

Burns' 1946 Replacement, § 2-2008, requires the trial court to give general instructions to the jury and provides that special instructions may be tendered and requested by the parties litigant. Consequently, it is not error to refuse an instruction which is merely a statement of an abstract proposition of law. *Snyder* v. *Stanley* (1922), 77 Ind. App. 253, 256, 133 N. E. 512; *Sweeney* v. *Sweeney* (1940), 107 Ind. App. 466, 474, 25 N. E. 2d 273.

To advise a jury that the complaint in a civil action is not evidence and that it is not the basis for an inference of fact is a general instruction as to an abstract proposition of law, wholly unrelated to the questions of substantive law with which the jury was concerned.

By the court's instructions 1, 2 and 4, read together, the trial court properly instructed the jury as to the allegations of the plaintiff's complaint, and of the defendant's answer; that these pleadings cast upon the plaintiff the burden of proving the material allegations of his complaint, including at least one of the separate specifications of negligence alleged therein, by a fair preponderance of the evidence; and that by burden of proof was meant the necessity of producing evidence that outweighed the evidence to the contrary. Application of said instructions precluded every possibility of the jury accepting the allegations of the complaint as evidence and of drawing any inferences of fact therefrom. It must be presumed that the jury followed the admonitions of the court contained in its instructions 1, 2 and 4. This precluded them from falling into the pitfalls which the appellant apparently sought to prevent by his instruction 1.

Appellant's requested instruction 1, which was refused by the court, reads as follows:

"The court instructs you that plaintiff's complaint filed in this cause of action is merely an unsworn charge or complaint against the defendant and cannot be considered by you as any evidence whatever in this cause.

"You are further instructed that no inference or presumption of negligence arises from the filing of said complaint against said defendant in this case, but the charges contained in said complaint must be established by the plaintiff by a fair preponderance of the evidence introduced in the trial of this cause, and if the plaintiff in this case fails to establish the negligence alleged in plaintiff's complaint by a fair preponderance of the evidence, then in that event your finding should be for the defendant, Emil B. Kempf."

This instruction is erroneous as the complaint contains four charges of negligence, two of which were submitted to the jury, and it was sufficient, insofar as the issue of negligence was concerned, for the plaintiff to establish one of these by a fair preponderance of the evidence. The implication of this instruction was to the effect that the burden was on the plaintiff to establish all of the charges of negligence contained in the complaint. This rendered the instruction bad and justified the court in refusing to give it to the jury.

Appellant's requested instruction 2, which was refused by the court, reads as follows:

"The burden is not on the defendant to show that he is not guilty of the acts of negligence charged in the complaint, but the burden is on the plaintiff to prove that the defendant was guilty of such negligence, and this rule as to the burden of proof is binding and must govern the jury in deciding the case. The jury has no right to dis-

regard this rule or adopt another in lieu thereof, but in weighing the evidence and in coming to a verdict the jury should apply this rule and adhere strictly to it. Therefore if the plaintiff has failed to establish the negligence charged in his complaint by a fair preponderance, then in that event your finding should be for the defendant, Emil B. Kempf."

All that part of the instruction which precedes the concluding sentence wherein the jury is told that "if the plaintiff has failed to establish the negligence charged in his complaint by a fair preponderance, then in that event your finding should be for the defendant, Emil B. Kempf," is merely calculated to emphasize the importance of the rule of law sought to be covered by the instruction. The substance of the concluding sentence of appellant's tendered instruction 2, insofar as it is a correct statement of the law, was covered by the Court's instruction 2, given to the jury, which told the jury that the burden was on the plaintiff to prove the material allegations of his complaint by a fair preponderance of the evidence, including at least one of the specifications of negligence contained in the complaint. The first sentence of appellant's tendered instruction 2 casts upon the plaintiff the obligation of establishing all the negligent acts and omissions contained in the complaint. This was clearly improper, since more than one independent act of negligence was charged. It follows, therefore, that appellant's tendered instruction 2 was fully covered by other instructions given by the court to the jury insofar as it was proper, but that other parts of said instruction clearly were erroneous, justifying its refusal by the trial court.

It is settled in this state that when the trial court gives a specific instruction as to what the plaintiff

must prove to be entitled to recover (as the court's instructions 9 and 10 did in this case, so far as the negligence charged was concerned), it is not error to refuse instructions tendered by the defendant to the effect that there was no burden on him to prove himself not guilty of such negligence. *Terre Haute, etc., Traction Co.* v. *Hayes* (1924), 195 Ind. 638, 645-646, 145 N. E. 569.

Appellant's tendered instructions 4 and 5 were refused by the court.

Appellant considers his tendered instructions 4 and 5 as companion instructions and states that both sought to instruct the jury that negligence cannot be inferred or presumed from the fact that appellee's decedent sustained serious injuries; that negligence could only be determined from the conduct of the appellant in the operation of appellant's motor vehicle. This subject matter was adequately covered by instructions given. Appellant's own instruction 7, given by the court, fully and completely covered the subject when it specifically stated "no inference or presumption arises from the fact, if you find it to be a fact, that Edward J. Himsel was fatally injured."

The court's own instruction 2 placed the burden upon the appellee of proving the material allegations of his complaint, including "at least one of the separate specifications of negligence alleged."

These two instructions given to the jury, fully covered the subject matter of tendered instructions 4 and 5; and specifically emphasized the particular points which appellant says the instructions were tendered to cover. There was no necessity for repetition and duplication, or for restatement of the same proposition in other language.

Appellant's requested instruction 6, which was refused by the court, reads as follows:

"You are instructed that the mere fact that plaintiff's decedent was fatally injured, if you find from a preponderance of the evidence that he was so injured, carries with it no presumption of negligence on the part of the defendant, Emil B. Kempf. Negligence is an affirmative fact that must be established in this case by a fair preponderance of the evidence. It is not sufficient for the plaintiff to show that the defendant, Emil B. Kempf, may have been guilty of the negligence charged in plaintiff's complaint. The evidence must establish by a fair preponderance the fact that the defendant, Emil B. Kempf, was so guilty, and where the evidence leaves the question of negligence unanswered, and shows that one of several things may have happened to bring about plaintiff's decedent's injuries or damages, for some of which things the defendant, Emil B. Kempf, is responsible, and for some of which things the defendant, Emil B. Kempf, is not responsible, it is not for the jury to guess by these various causes, and to find that the negligence of the defendant, Emil B. Kempf, was the real cause, if there is not satisfactory foundation in the evidence for that conclusion. In other words, you have no right under the law to return a verdict under plaintiff's complaint against the defendant, Emil B. Kempf, unless a satisfactory foundation therefor has been found in evidence against him. If the evidence fails to furnish such foundation, the plaintiff cannot recover from the defendant, and your finding, under such circumstances, should be for the defendant, Emil B. Kempf."

This instruction erroneously ignores the proposition that negligence may and frequently does consist of an omission or failure to act, as well as an affirmative act. As heretofore pointed out, the charges of negligence were based upon the failure of the appellant to do certain things, and this instruction would have given the jury an improper basis upon which to weigh the question of negligence.

The statement in the third sentence that it is not for the jury to guess "where the evidence . . . shows that one of several things may have happened to bring about plaintiff's decedent's injuries or damages, for some of which things the defendant, Emil B. Kempf, is responsible, and for some of these things the defendant, Emil B. Kempf, is not responsible" also rendered the whole instruction improper. The above quoted statement assumes that there was evidence of other things which might have caused the death, whereas, there is positively no evidence of any other fact or circumstance which in any manner contributed to the death, other than the negligence of the defendant. An instruction which assumes facts of which there is no evidence is clearly erroneous and should not be given.

The phrase "the real cause" found in the third sentence of the instruction, relating to the cause of the death of the decedent, would have placed upon the appellee the duty of establishing his case far beyond a fair preponderance of the evidence and would have required proof to a certainty.

The last portion of the instruction requiring a "satisfactory foundation" in the evidence and mandating a verdict for the defendant in the absence of such "satisfactory foundation," likewise placed an undue burden upon the appellee. As the court told the jury in its own instruction 2, the appellant was required to establish his case only by a fair preponderance of the evidence, which the court defined in its instruction 4. The term "satisfactory foundation" was not defined by any instruction, either given or tendered. The commingling and use of both "a fair preponderance of the evidence" and "a satisfactory foundation" in the same instruction suggests to the jury that the two are differ-

ent and would have confused the jury as to the degree of proof required.

The use of the term "satisfactory foundation" found in several places in the instruction would have given to the jury a measure of the burden of proof, without any standard whatever. It could only be construed to mean to the personal satisfaction of the individual members of the jury, without limitation, and that would have been clearly erroneous. *Sherman* v. *Indianapolis Traction, etc., Co.* (1911), 48 Ind. App. 623, 625, 96 N. E. 473; *Peoples Trust & Savings Co.* v. *Cohen* (1947), 117 Ind. App. 472, 73 N. E. 2d 366.

Appellant's requested instruction 8, which was refused by the court, reads as follows:

"The court instructs you that the plaintiff in this case is relying upon circumstantial evidence to establish the material allegations contained in plaintiff's complaint. It is, therefore, the duty of the court to instruct you in reference to circumstantial evidence. While circumstantial evidence is, in its nature, capable of the highest degree of moral certainty, yet experience and authority both admonish us that it is a species of evidence in the application of which the utmost caution and vigilance should be used. Circumstantial evidence, to be sufficient to establish a fact by a fair preponderance of the evidence, ought to be of a conclusive tendency; that is, its tendency ought to be not only to convince the minds of the jury of the truth of such fact but to exclude every supposition that is inconsistent with the truthfulness of the fact. The true test by which to determine the value of circumstantial evidence in respect to its sufficiency to establish a material fact by a fair preponderance of the evidence is not whether the proof establishes circumstances which are consistent, or which coincide with the hypothesis of the establishment of the material fact, but whether the circumstances satisfactorily established are of so conclusive a character, and point so surely and unerringly to

the establishment of the material fact, as to exclude every reasonable hypothesis of the falsity of said fact. The force of circumstantial evidence being exclusive in its character, the mere coincidence of a given number of circumstances with the hypothesis of the establishment of such material fact, or that they would account for, or concur with, or render probable, the existence of a material fact by a fair preponderance of the evidence is not a reliable or admissible test unless the circumstances arise to such a degree of cogency and force, as, in the order of natural cause and effect, to exclude to a moral certainty every other hypothesis except the single one of establishing such material fact by a fair preponderance of the evidence."

Appellant contends that this instruction, dealing with circumstantial evidence, should have been given since it was more specific than the court's own instruction 11 and presents appellant's theory of circumstantial evidence.

A careful study of the two instructions, this instruction and the court's own instruction 11, will disclose that there is no substantial difference between the two. Both admonished the jury to use caution and vigilance in considering such evidence, but the instruction of the court went even farther and advised that such evidence required "careful and patient consideration and analysis." Both told the jury that the mere coincidence of a number of circumstances was not sufficient unless the circumstances were so conclusive as to exclude every other hypothesis. Both told the jury that if the circumstances only concurred with or rendered probable a certain hypothesis, such fact would not be established by a fair preponderance of the evidence.

Much of the language and phraseology of the two instructions is identical, and the similarity of the two is such that it is difficult, if not impossible, to dis-

tinguish them. The appellant has failed to point out any particular element contained in his own instruction, which was omitted from the instruction of the court. From all of the above, it is apparent that the court's own instruction fully and adequately covered the subject matter of circumstantial evidence, and the giving of appellant's tendered instruction would have been merely repetitious.

Of perhaps greater interest in considering appellant's tendered instruction 8, along with the court's instruction 11, is the fact that both are clearly erroneous as a matter of law, and that the court's instruction 11, given to the jury, erroneously gave to the jury an improper yardstick for the consideration of circumstantial evidence, wholly to the benefit of appellant, and wholly harmful to the appellee.

A case may be established by circumstantial evidence, as well as by direct evidence, whether the case be civil or criminal. There are innumerable Indiana authorities so holding. The question then arises as to the weight to be given to circumstantial evidence, i. e., the probative value to be given to such evidence in determining whether or not the burden of proof has been discharged.

This is the precise subject matter of both appellant's tendered instruction and the court's instruction 11. Both similarly stated that the coincidence of a number of circumstances with the hypothesis of the establishment of a material fact, sufficient to render it probable, was not enough; but that the force of the circumstances must be such as to exclude every other hypothesis, before it could be said that the fact had been established to a degree sufficient to discharge the burden of proof.

The rule thus stated by two instructions is admittedly the rule in criminal cases, where the degree of proof necessary is "beyond reasonable doubt" and where the accused is protected by "a presumption of innocence until proven guilty."

This appeal involves a civil case, however, where the burden was merely to prove the material allegations of the complaint by a "fair preponderance of the evidence," and where there was no presumption of freedom from fault or freedom from liability upon the part of the appellant.

The distinction between "beyond reasonable doubt" in a criminal case and a "fair preponderance of the evidence" in a civil case has always been recognized in Indiana jurisprudence. The two are wholly different, clearly recognize distinguishable degrees of burdens of proof and, of course, the duty of establishing a fact "beyond reasonable doubt" imposes a duty far greater than to establish the same fact by "a fair preponderance."

The correct and recognized rule of measuring circumstantial evidence for the purpose of determining its sufficiency to discharge the burden of proof by a fair preponderance of the evidence in a civil action is uniformly stated:

"It is only necessary in civil cases, that the circumstantial evidence should agree with and support the hypothesis which it is adduced to prove; it is not necessary that the minds of the jurors be freed from all doubt; it is their duty to decide in favor of the party on whose side the weight of evidence preponderates, and according to the reasonable probability of truth."

*Indianapolis, Peru & Chicago R. R. Co.* v. *Collingwood* (1880), 71 Ind. 476, 477; *Louisville, New Albany & Chicago Ry. Co.* v. *Thompson* (1886), 107 Ind. 442,

456, 8 N. E. 18, 9 N. E. 357; *Indianapolis, Peru & Chicago Ry. Co.* v. *Thomas* (1882), 84 Ind. 194, 197; *Chicago & Erie R. R. Co.* v. *Mitchell* (1915), 184 Ind. 383, 392, 110 N. E. 215; *Pittsburgh, etc., R. Co.* v. *Hoffman* (1914), 57 Ind. App. 431, 449, 107 N. E. 315; *Hedrick* v. *D. M. Osborne & Co.* (1884), 99 Ind. 143, 147.

The first sentence of this tendered instruction would have told the jury that the plaintiff "is relying upon circumstantial evidence to establish the material allegations of his complaint." This conclusion is clearly erroneous for there was positive and undisputed testimony as to the fact of death, as to the negligent operation of the appellant's motor vehicle, both in speed and operation upon the wrong side of the highway. These were all material allegations, which were not even denied by the appellant, and it would have been error for the court to class this positive testimony as circumstantial evidence.

There was no error in the refusal of appellant's tendered instruction 8.

Appellant's requested instruction 10, which was refused by the court, reads as follows:

"If any one fact, necessary to the establishment of a material issue, is wholly inconsistent with the hypothesis of the establishment of such material issue, it breaks the chain of circumstantial evidence upon which the inference of the establishment of such material issue depends; and, however plausible or apparently conclusive the other circumstances may be, the establishment of such material issue by circumstantial evidence must fail, and your finding upon such issue should be for the defendant."

This instruction is an abstraction. It is not applied to any specific issues or facts involved in this case.

As stated in an earlier part of this opinion, it is not error to refuse an instruction which is merely a statement of an abstract proposition of law. *Snyder* v. *Stanley, supra; Sweeney* v. *Sweeney, supra.*

When a party litigant complains on appeal of the refusal of the trial court to give one of his tendered instructions dealing with the issues or the evidence, the burden is upon him to point out in his brief to what issues and evidence the instruction was applicable and how he was harmed by the refusal of the trial court to give the instruction to the jury. It is elemental that an appellate tribunal will not assume the burden of searching the record for grounds upon which to predicate a reversal, the obligation resting upon a party to an appeal to specify wherein he was harmed by the refusal of a tendered instruction. *Sullivan* v. *Hoopengarner* (1911), 49 Ind. App. 54, 56 to 58, 96 N. E. 620.

It does not suffice for the appellant to say, merely, as he did of his tendered instruction, that it "was not covered by any instruction given in this case" . . . "correctly states the law, and is applicable in this case" . . . and that "it was error for the court to refuse to give this instruction." From the language of said instruction it appears that it relates to "one fact" and to a "material issue"; but nowhere in appellant's brief is there anything to indicate to what "fact" or to what "issue" the author of the instruction had reference.

Appellant's brief is not in substantial compliance with Rule 2-17(e) of the Supreme and Appellate Courts of Indiana (1949 Revision) as to present any question with respect to the refusal of the trial court to give to the jury said tendered instruction. Said Rule provides that, "after each cause for a new trial relied upon, there shall be concisely stated the basis of the

objection to the ruling complained of, exhibiting clearly the points of fact and of law being presented and how they are applicable. . . ." No effort has been made to comply with the quoted part of the Rule.

As previously stated in this opinion, the trial court, in its own instruction 11, gave an erroneous charge upon the subject of circumstantial evidence, which was invited by the tender of appellant's instruction 8. Tendered instruction 10 emphasizes and aggravates the errors referred to above and goes one step further by mandatorily attempting to apply to this case the same standards that pertain to the place of circumstantial evidence in criminal cases.

There was no error in the refusal of appellant's tendered instruction 10.

Appellant's requested instruction 11, which was refused by the court, reads as follows:

"The court instructs you that although you may find from a fair preponderance of the evidence in this case that the defendant, Emil B. Kempf, was guilty of operating his automobile in a negligent manner substantially as charged in plaintiff's complaint herein, you are further instructed that such finding alone would not entitle the plaintiff to recover from the defendant herein.

"You are further instructed that the evidence must go farther and establish by a fair preponderance that the defendant in the operation of his motor vehicle struck the person of Edward J. Himsel and substantially injured him.

"You are further instructed that if, after having considered all of the evidence introduced in the trial of this case upon this issue, you are unable to determine whether or not the motor vehicle operated by the defendant substantially as charged in plaintiff's complaint struck the person of Edward J. Himsel, then in this view of the case the court instructs you that the plaintiff has failed to establish this material allegation contained in plaintiff's

complaint by a fair preponderance of the evidence and your verdict under such circumstances should be for the defendant, Emil B. Kempf."

This instruction would have told the jury that, in addition to finding that negligence was established, it was also necessary for the jury to find that the defendant's vehicle struck the decedent, and if it was unable to do so the plaintiff had failed in discharging his burden.

This subject matter was adequately covered by instructions given as follows:

The court's instructions correctly placed the burden of proof of the material allegations of the complaint upon the appellee and correctly defined the burden of proof.

The appellant's instruction 17, given by the court, specifically placed the burden of proving the fact that appellant's car did strike decedent upon the appellee, and this instruction is almost indistinguishable from tendered instruction 11, not only in the subject matter, but in the language used. There could be no error in failing to repeat the exact substance of appellant's instruction 17 in almost identical language.

The apparent purpose of this instruction was to impress upon the jury the necessity of determining that the motor vehicle operated by the appellant struck the appellee's decedent. Any benefit to be derived by the appellant from instruction 11 was the possibility that the jury might determine that the automobile did not strike the decedent. In view of the jury's answer to the single interrogatory submitted by the appellant, wherein it was specifically found that the automobile did strike the decedent, there could be no possible harm to the appellant from the refusal of the trial court to give this instruction.

There was no error in the refusal of appellant's tendered instruction 11.

Appellant's requested instruction 12, which was refused by the court, reads as follows:

"The court instructs you that although you may find from a fair preponderance of the evidence in this case that the defendant, Emil B. Kempf, was guilty of some one or more or all of the acts of negligence charged in plaintiff's complaint, you are further instructed that such finding on your part would not of itself justify you in returning a verdict for the plaintiff and against the defendant in this case.

"You are further instructed that the burden is on the plaintiff in this case to establish by a fair preponderance of the evidence introduced in the trial of this case that the motor vehicle of the defendant struck the person of Edward J. Himsel and thereby injured him substantially as charged in plaintiff's complaint.

"You are further instructed that if, after considering all of the evidence introduced in the trial of this case, you find that such evidence upon this issue is evenly balanced, that is to say that there is as much evidence on this issue tending to show that the defendant's motor vehicle did strike the person of Edward J. Himsel and as much evidence that the motor vehicle operated by the defendant did not strike the person of Edward J. Himsel, then in this view of the case the court instructs you that the plaintiff has failed to establish this material allegation contained in plaintiff's complaint by a fair preponderance of the evidence and your finding should be for the defendant, Emil B. Kempf."

This instruction is almost identical with appellant's tendered instruction 11, dealing with the necessity of a finding that the motor vehicle of appellant struck the decedent. The appellant says that it differed from tendered instruction 11 only in that it particularly

pointed out that if the evidence was evenly balanced upon this issue (whether the motor vehicle struck the decedent) then the verdict should be for the appellant.

The same subject was completely covered by instructions given to the jury. The court's own instruction 4 directly told the jury that if it found the evidence evenly balanced on any question, its answer should be against the party having the burden of proof. It was not necessary for the court to restate this rule to make it specifically apply to each and every one of the material allegations of the complaint, but a general statement, applicable to all of the allegations, was sufficient.

This instruction is erroneous as a matter of law in that it states that the evidence upon the issue would be evenly balanced when there was "as much" evidence one way and "as much" evidence the other way. The term "as much" deals with the quantity or amount of evidence, whereas, the jury was concerned rather with the weight or preponderance of the evidence. "As much" might be thought to depend upon the number of witnesses, whereas under the correct rule as to the preponderance of the evidence, the jury was concerned with only the probative value or convincing power of the evidence offered.

An instruction which may lead the jury to understand that the preponderance of the evidence is to be determined by the number of witnesses testifying on each side of the case is erroneous. *Howlett* v. *Dilts* (1891), 4 Ind. App. 23, 30, 30 N. E. 313.

This instruction is like appellant's tendered instruction 11 and could have been useful to the appellant only in the event that the jury failed to determine that the automobile of the appellant struck the appel-

lee's decedent. The jury's answer to the single interrogatory submitted, removed all question on this particular issue and rendered the refusal of this instruction harmless to the appellant.

There was no error in the refusal of the appellant's tendered instruction 12.

Finding no reversible error, the judgment is affirmed.

NOTE.—Reported in 98 N. E. 2d 200.