## U. S. STEEL CORPORATION *v.* CICILIAN.

[No. 19,582. Filed February 27, 1962. Rehearing denied April 9, 1962.]

250

Stevenson, Conaghan, Hackbert, Rooks & Pitts, Harlan L. Hackbert, Douglas F. Stevenson, all of Chicago, Illinois, White, Raub & Forrey, and George C. Forrey III, of Indianapolis, for appellant.

M. B. Tomsich, of Gary, for appellee.

KELLEY, P. J.—Appellee, as sole dependent of her husband, John J. Cicilian, deceased, duly filed her application for adjustment of claim for benefits under the Workmen's Compensation Act, alleging, in substance, that said decedent died as a proximate result of personal injuries received by him by reason of an accident arising out of and in the course of his employment by the appellant.

A hearing before a single member of the Board resulted in a finding that decedent sustained a fatal injury which did not arise out of his employment and awarded that appellee take nothing as against appellant. The Full Board, upon a hearing of appellee's petition for review of the original award, found that decedent "sustained a fatal injury, which arose out of and in the course of" decedent's employment "on the defendant's (appellant's) premises," and entered an award of recovery by appellee.

Under the proper assignment that said award of the Full Board is contrary to law, appellant, by its brief, advances the contention that the decedent's fall during his lunch hour from the roof of a building in

which he had no duties to perform and from a height to which he was specifically forbidden to go did not arise out of and in the course of his employment, and therefore his resulting death is not compensable under the Workmen's Compensation Law.

Appellee has not favored us with an answer brief and, consequently, while we do not consider this as a proper case in which to consider the failure to file such brief as a confession of error (see *Busick* v. *Barger* (1952), 230 Ind. 198, 102 N. E. 2d 499; *Meadows* v. *Hickman* (1947), 225 Ind. 146, 73 N. E. 2d 343), we may, nevertheless, consider the statements in appellant's brief as to the record as conclusive when such statements are not in conflict with the parts of the record set forth in such brief, and reverse the award if appellant's brief makes a prima facie showing of error. (See cases collected in West's Ind. Dig., Vol. 4, Appeal and Error, §773(5) and same section in 1961 Cum. Ann. Pocket Part of same work. See, also, I. L. E., Vol. 2, Appeals, §394, and cases cited in the notes thereto.)

The burden was upon appellee to establish by evidence of probative value, free of conjecture, surmise, or mere guess, that decedent suffered his fatal accident while in the course of his employment and under or by reason of conditions which may be reasonably considered as incidental to his employment or as having an incidental connection therewith. *Mishawaka Rubber & Woolen Mfg. Co.* v. *Walker* (1949), 119 Ind. App. 309, 84 N. E. 2d 897. It is no longer sufficient to predicate liability of the employer upon mere proof that the employee's accident or injury occurred while he was at the place of his employment, or, in other words, *because* he was then employed by the employer at the place of the occurrence. It is

now essential that there be evidence to establish that the accident or injury "arose" out of the employment by reason of some causal connection between the employment and the performance or fulfillment of some service or the duties thereof, and that such accident or injury occurred within the period of such employment at a place where the employee, by reason of said employment, might reasonably be expected to be at the time of the accident or injury. In general, see I. L. E., Vol. 30, Workmen's Compensation, §315, and citations in notes.

The evidence, as reflected by appellant's brief, tends to disclose that decedent, on August 8, 1958, was in appellant's employ and was "fitting up castings" in the building designated as 10-3. Some years prior to the accident decedent had lost an eye and on March 28, 1949 was authorized by the Medical Department to resume work on the condition that he was to do "no climbing" and he was therefore "grounded" and forbidden "to go up any heights at all." About three weeks before the fatal day decedent complained of not feeling well "maybe a little nervous," and requested a transfer to a big "machine" because "he wanted to get away from any responsibility." The transfer was granted but he remained there only a week or two when, at his request, he was transferred back to his old job in said building 10-3 about one week prior to the date of the fatal occurrence.

There is another building, designated as 10-2, "the Merchants Mill," the entrance to which is "200 or 250" feet from said "10-3 mill." Along the top of the said building 10-2 runs a "cat-walk" behind an iron railing which extends to and beyond a point over and above the said entrance to said building 10-2. Above this en-

trance is a window to which there is no access, and above said window and running to the eaves of the roof of said building 10-2 are "eight or nine" "electric wires or cables." These cables extend out over the "walk-way" which leads to said entrance to said building. Inside said building 10-2 is the rolling mill and a "pulpit" wherein the operator works the electric controls of hot steel rods. This pulpit is "10 or 15 feet" from said entrance. The roof of said building 10-2 descends sharply from said cat-walk to its edge, the actual width of said roof from its edge to the cat-walk being undisclosed.

On August 8, 1958 decedent and two other employees worked in said building 10-3 until about 11 o'clock the morning of that day. At that time he told one of his co-workers that "he was a little tired and warm" and the co-worker told him to rest a little. He came back before the noon lunch hour and ate lunch with the two co-workers, starting about five minutes before twelve o'clock. In some ten minutes or so, the co-workers finished their lunch and one of them went outside the building 10-3 and lay down and the other lay down inside the building. At that time the decedent was "still eating grapes in the same spot." Apparently said two co-workers dozed off while the decedent was finishing his lunch. During this noon hour none of the three men were performing any work in their employment.

At about a quarter after twelve, some one, who is not identified or named in the evidence, notified the worker lying on the board outside the building 10-3 that "something had happened to Mr. Cicilian." He went halfway to the entrance to said building 10-2, recognized the decedent lying on the walkway in front of the entrance door, and then "ran" back and

told the other worker, dozing inside said building 10-3, that something had happened to decedent on the "sidewalk" in front of said entrance.

There were no witnesses who saw the decedent at any time from the time the two co-workers dozed off until his body was seen falling through the air in front of the entrance to said building 10-2 by the operator of the electric controls in said "pulpit" located inside said building 10-2.

The latter said that from the "pulpit" he could see the "doorway" pretty clear and that he saw "a man's hard hat" falling and then he saw the decedent's body falling. "I say approximately three feet off the ground . . . . When I first saw the body it was three feet off the ground. When I first saw the hard hat the body was about five feet. . . . I don't know where the body came from. I saw it about five feet off the ground, so I don't know where it came from. . . . His feet were higher than the rest of his body . . . . It seemed like the body bounced when it hit, when it hit the pavement. . . . When I say the body bounced, I was simply saying only the legs bounced. . . ."

There is no other evidence, direct or circumstantial, of probative value or from which an inference may be drawn, as to the happening of the occurrence. One of the co-workers testified that "one of the fellows in the other mill was saying that he saw somebody up on the cat-walk, but he didn't say whether it was Mr. Cicilian or not." An examination of the roof by the foreman, one of the co-workers, and others, failed to disclose any imprints except "one item was found at the edge of the roof, right at the very edge, way over here in front of this de-icer. It was just a mark or something, no indication what it was." It had rained the night before the occurrence and the dust was all

washed down. The roof was of corrugated steel with a coating of tar. The foreman testified that "We walked the roof and we couldn't see our own imprints. That is the reason I say I had to make a real hard imprint to get a print on a roof like that." The height in feet of the edge of the roof from the walk way is not found in the evidence but the photographs in evidence show the roof to be a considerable distance off the ground.

No death certificate appears in the evidence. There appears, however, a stipulation and agreement that the cause of death was a skull fracture and broken neck.

It seems that the evidence referred to affords only one logical and reasonable inference and that is that the decedent fell in some manner from a considerable height and that the only place from which he could have fallen was from the catwalk along the roof of said building 10-2 or from the roof itself. There is no evidence of any kind nor any permissible inference from any evidence which gives or affords any work-connected reason for the presence of the decedent at the place where he was found after he fell. He was medically "grounded" and forbidden to do any climbing or to go up any heights at all. Yet the evidence is conclusive that he fell from a height above the walkway. Under the evidence, no other explanation seems possible. It must follow, then, that the Board either engaged in conjecture and speculation as to how the occurrence took place or it found for appellee on an assumption or inference that decedent received his fatal injuries under unexplained circumstances at the plant of the appellant, where he was employed, and, therefore, that it must be concluded that such fatal injuries to decedent were the result of an acci-

dent arising out of and in the course of his employment. We know of no legal authority for such conclusion under such circumstances.

It appears from appellant's brief that at the hearing before the Full Board the appellee relied upon the case of *School City of Hammond* v. *Moriarty* (1949), 119 Ind. App. 206, 85 N. E. 2d 273. The rebuttable inference referred to in that case, however, is predicated expressly upon the basis that the employee is charged with the performance of a duty and is found injured or dead at a place *"Where it would be necessary for him to be in performing that duty."* (Emphasis supplied.) No such facts or circumstances are made evident by the record in this case. On the contrary, there is no evidence here that decedent had any duties of any kind to perform in or about said building 10-2 and there is conclusive, undisputed evidence that decedent had no duties to perform above the level of the ground.

The rule announced and adhered to in *Mishawaka Rubber & Woolen Mfg. Co.* v. *Walker* (1949), *supra,* and in *Taylor* v. *Director of Public Works & Supply et al.* (1951), 121 Ind. App. 650, 100 N. E. 2d 831, in our opinion, is controlling upon the facts and circumstances herein. The evidence here wholly fails to show either directly or by reasonable inference that decedent sustained his fatal injuries while engaged in any act, duty or performance of his employment or in any act, duty or performance incidental to or in any way connected with such employment or any service thereof. There is also a total absence of any evidence or reasonable inference to establish that decedent at the time of the occurrence resulting in his fatal injuries was in a place where it was necessary for him to be in the performance of his

work or where he might reasonably have been expected to be when engaged in his work or something incidental thereto. The evidence is uncontradicted that the occurrence took place during decedent's noon lunch hour when he and his said co-workers "were not performing any work." Such circumstances prohibit any reasonable or logical presumption that solely because decedent was on the premises of appellant at the time his fatal injuries were received, the same, therefore, arose out of and in the course of his employment.

The award of the Full Board herein appealed from is reversed.

Bierly and Pfaff, JJ., concur; Gonas, J., dissents.

## ON PETITION FOR REHEARING

KELLEY, P. J.—The appellee has filed herein a petition asserting that our opinion in this cause is erroneous in certain respects.

The assignment of error was filed by the appellant in the office of the clerk of this court on December 15, 1960. From that date down to the filing of the aforesaid petition on March 19, 1962, the appellee entered no appearance and filed no brief. Upon such failure of appellee to file answer brief, we were vested with a discretion. It may have been advisable to treat such failure as a confession of error and have remanded the case for further proceedings without any opinion on the merits. 2 I. L. E., §394, pages 275, 277, and cases cited. However, we exercised our discretion on behalf of appellee and considered and determined the questions presented by appellant's brief without any assistance from appellee.

Now for the first time, upon petition for a rehearing, appellee seeks to discuss the questions pre-

sented and argued by appellant in its brief. It is too late for appellee, after the case has been decided, to seek to present by a petition for rehearing the matters, questions and propositions which were proper for presentation and treatment in an answer brief.

To the end that no injustice may have occurred by reason of appellee's omission to file her brief, we have examined said petition for a rehearing. We find nothing therein which calls for any change or alteration of our original opinion. Of the ten asserted reasons, some are duplications in substance, others give no reason why the decision is thought to be erroneous as required by Rule 2-22, while others contain assumptions and unfounded conjectures as to certain stated facts which find no basis in the evidence. Generally, see *Automobile Underwriters, Inc.* v. *Smith* (1961), 241 Ind. 302, 171 N. E. 2d 823, 825.

The petition for a rehearing is dismissed.

Bierly and Pfaff, JJ., concur; Gonas, J., dissents.

NOTE.—Reported in 180 N. E. 2d 381. Rehearing dismissed 181 N. E. 2d 538.