MITCHELL *v.* SMITH

[No. 20,240. Filed November 29, 1965.]

*John T. Hume* and *Smith & Jones,* of counsel, of Indianapolis, and *Phillip C. Klotz* and *Christian, Waltz, White & Klotz,* of counsel, of Noblesville, for appellants.

*Ronald S. Lieber,* of Indianapolis, *Joseph G. Roberts,* and *Roberts & Church,* of counsel, of Noblesville, for appellee.

CARSON, J.—This case comes to us on appeal from the Hamilton Circuit Court. The case was tried by a jury. The jury found for the appellee, Clarence L. Smith, plaintiff below and assessed damages at $5,000.00. Consistent judgment was rendered on the verdict. The issues below were formed by the plaintiff's complaint and the defendant's answer under rule 1-3.

It is noted in the argument portion of the appellant's brief that he expressly waives specifications 3 and 4 set out in the motion for new trial. Further the appellant combines 1, 2, 5 and 6 and argues them jointly and we shall so consider them.

The complaint alleged in substance that the appellee entered into an oral contract with the appellant to perform certain carpentry repairs on premises owned by the appellant. The complaint also alleged that the appellant instructed the appellee to use a certain extension ladder in performing said repairs. The following specific acts of negligent conduct on the part of the appellant were set out in the complaint:

1. Failing to inspect said ladder to determine that it was safe for use.

2. Instructing plaintiff to use a ladder which was unsafe for use.

3. Failing to warn the plaintiff that the ladder the plaintiff was using at the instance of the defendant was not safe for use.

The appellant-defendant filed answer in denial.

The appellant filed his motion for new trial which was overruled and from which ruling this appeal is taken. The pertinent separate grounds set out in the motion for new trial are as follows:

"1. The Court erred in overruling defendant's motion for directed verdict at the conclusion of plaintiff's evidence.
2. The Court erred in overruling defendant's motion for directed verdict at the conclusion of all the evidence."
"5. The verdict is not sustained by sufficient evidence.
6. The verdict is contrary to law."

In this appeal the appellant assigns as his sole error that:

"The court erred in overruling appellant's motion for new trial."

Our courts have on several occasions outlined the duty of the trial court when called upon to rule on a motion for directed verdict either at the conclusion of all the evidence or at the conclusion of the plaintiff's evidence. This rule has been set out in the leading case of *Whitaker, Adm.* v.

*Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734, and is as follows:

> "When there is a total absence of evidence or legitimate inference in favor of the plaintiff upon an essential issue; or where the evidence is without conflict and is susceptible of but one inference and that inference is in favor of the defendant."

In such a situation the court may sustain such a motion. It is therefore the duty of this court to determine whether the plaintiff sustained his burden of proof as to actionable negligence sufficiently to withstand a motion for directed verdict.

The facts are essentially as follows:

The appellee and appellant entered into an oral agreement under which the appellee was to install a vent pipe onto an apartment building owned by the appellant. The appellant was to furnish the necessary materials and pay the appellee $2.50 an hour. The appellant instructed the appellee to pick up an extension ladder at another apartment owned by the appellant. The appellee proceeded to said apartment building and picked up a two piece extension ladder belonging in fact to one Joe Nelson. The appellee took the ladder to the apartment where the work was to be done and while working from the extended portion of the ladder two metal brackets which held the extension portion of the ladder against the lower portion broke. The appellee fell from the ladder to the ground below, a distance of some twelve feet breaking his left ankle and sustaining various other minor injuries. The broken pieces of the metal brackets were found the next day by the appellee's brother who in his testimony stated that the broken edges of the brackets were clean and shiny.

The parties stipulated in the proceedings below that the appellee Clarence Smith was an independent contractor and was not an employee of the appellant Marvin Mitchell.

The general rule is that in a contractee-contractor relationship the contractee is not liable for injuries sustained by

the contractor in the performance of the contract. *Hilleary* v. *Bromley et al.* (1946), 146 Ohio St. 212, 64 N. E. 2d 832; 57 C. J. S. Master & Servant § 607, p. 379. However, where the contractee agrees or undertakes to furnish the instrumentalities for doing the work he must use due care to provide that the instrumentalities furnished are reasonably safe for the purpose for which they are provided. 57 C. J. S. supra. This duty was discussed in the case of *Cummings* v. *Union Quary Co.* (1935), 231 Mo. App. 1212, 87 S. W. 2d 1039 cited in 31 A. L. R. 1411; in that decision the court stated that if the owner furnished the instrumentalities, with which the work is to be accomplished, to the independent contractor, and retains possession and control over the place where the work was to be done and the instrumentalities, the independent contractor is then placed in the same standing as a servant and employee in that due care must be exercised by the employer to see that the place and instrumentalities are reasonably safe for the purpose for which they are furnished.

From the evidence it appears that the appellant did not control the manner in which the work was to be performed. He was not present at the place where said contract was to be performed until after the appellee sustained his injuries. He did not inspect the ladder. There is some question as to whether the appellant actually meant for this particular ladder to be used. This court has carefully digested the Indiana law on the question of independent contractors and their relation to their contractees as regards the latter's liability for negligence, but little has been decided on the particular question at hand. This being the case we have resorted to the decisions of other jurisdictions. *Arizona Binghamton Copper Co.* v. *Dickson* (1921), 195 P. 538, 540, involved a situation whereby a contractee provided an independent contractor with a ladder which had been constructed by a previous contractor. The independent contractor was killed in a fall from the ladder when one of the rungs broke.

In discussing the duties involved in this relationship the Supreme Court of Arizona said:

> "The general rule is that a contractor cannot recover damages from his employer for injuries he may sustain in the performance of his contract, and it is predicated upon the fact that the contractor has control and is bound, as every principal is, to provide for his own safety and protection. If the employer retains the right of control, or— as in this case—he agrees to furnish the instrumentalities to the contractor to be used in his work and the latter is injured by reason of their being defective, a different rule comes into play. The rule deducible from the decisions is well stated in 14 R. C. L. 81, § 19, as follows:
>
> 'Where the employer reserves the right to direct the manner of the performance of the contract in any particular, or where he undertakes to provide any of the instrumentalities, he owes to the contractor and the latter's employees the duty of exercising reasonable care in respect to such matters.' . . ."

The court further stated at page 541:

> "It seems that, if the defendant knew, or ought to have known, or from a careful examination could have known, that the ladder was defective when it was turned over to the deceased and his partner, it is responsible for the injuries suffered by the deceased by reason of the defective construction of said ladder."

It therefore appears to this court that in order for the verdict below to be affirmed some evidence of the discoverability of the alleged defect must have been presented. We feel it necessary therefore to set out that part of the record concerning this point. The following testimony was elicited from the appellee Clarence Smith:

Direct:

"Q. Then what did you do with regards to the ladders?
A   Yes, they were laying along the side of the apartment and I looked at them, checked them for the length that I thought would be appropriate and glanced over them like I suppose you would most any ladders and they looked alright so I proceeded to put them in the truck.

Q   Who helped you carry the ladders?
A   No one, I put them in the truck myself.
Q   Did your brother Don help you at all?
A   No.
Q   Did anyone try to stop you from taking the ladders?
A   No.
Q   Did anyone see you carrying the ladders to the truck?
A   They very possibly could. I do not know, there were other people there."

\*   \*   \*   \*   \*

Cross examination:

"Q   Did Marvin Mitchell ever describe to you this particular extension ladder by color or age or size?
A   No, sir.
Q   Did Marvin Mitchell ever tell you where at the property at 21st and Ritter that you could find an extension ladder? I mean on what portion of the property.
A   No, sir.
Q   Now, did you see any other ladders at 21st and Ritter?
A   Small ladders.
Q   How small?
A   Step ladders and possibly 12 foot ladder that would not be—no other extension, the only one.
Q   After you found this particular extension ladder did you stop looking any further for any other extension ladders?
A   I was clear around the building and that was the only one I had seen outside.
Q   Did you examine this ladder leaning up against the side of the apartment?
A   I looked at the ladder and checked it for its length with a glance and looked at the ladder. It looked like it was alright to use, I thought.
Q   Didn't you do a little bit more than just glance at it, Mr. Smith?
A   Well, I took it and looked at it. Yes, I looked at it.
Q   Did you look at the rails, the side rails, and the rungs?
A   I gave them a looking over, yes.
Q   Isn't it a fact that you pulled the ladder, the extension

ladder, away from the side of the apartment building and looked at the back side of the ladder?

A   Yes, as I was taking it up I looked at it.

Q   From your observation of the front and the back of the ladder, did it look alright to you?

A   It seemed strong enough.

Q   And from there you picked up the ladder and put it in the truck?

A   I did.

Q   Did it look alright to you when you put it in the truck?

A   Yes, I suppose.

Q   From there, I take it, the next time you had it was when you took it out of the truck?

A   That's correct.

Q   Now, did you put the ladder in your truck yourself or did you have help?

A   I put it in.

Q   How about taking it out of the truck when you got to Capitol and 30th?

A   Yes, I took it out, also.

Q   When you were putting up this vent pipe did you set the bottom piece of the ladder first and then attach the extension?

A   That's right.

Q   The ladder appear to be alright when you were setting the bottom piece?

A   Yes, yes, it was.

Q   You notice anything peculiar when you attached the extension to the bottom piece?

A   No, nothing particularly."

From the above it is evident that the plaintiff himself inspected the ladder and found no defect.

From a careful review of the evidence we fail to find any showing that the alleged defect in the ladder was discoverable upon reasonable inspection. As was stated in the case of *Green* v. *Sansan* (1889), 41 Fla. 94, 25 S. 332, 335:

"In order to authorize a finding that an employer has been negligent there must be evidence of some fact from which

negligence can legitimately be inferred, other than the mere breaking of an instrumentality furnished by the employer. It must be shown that the defect which caused the break was known to the master prior to the accident or that, in the exercise of ordinary or reasonable care, he ought to have known it; as that the break was occassioned by a defect which a reasonable and proper inspection would have disclosed and that ordinary and reasonable care required an inspection to be made."

In order for the plaintiff to have sustained his burden of proof it was necessary for him to show not only negligence on the part of the defendant but a proximate relationship between that negligence and the injuries sustained by the plaintiff as was stated in the case of *Pennsylvania R. R. Co.* v. *Sherron* (1952), 230 Ind. 610, 620, 105 N. E. 2d 334:

"To sustain a recovery the evidence must establish a negligent action or omission on the part of the defendant which *proximately caused* the plaintiff's injuries. A negligent act or omission does not necessarily cause injury." (Our emphasis)

See also *Nepsha* v. *Wozniak* (1950), 120 Ind. App. 362, 365, 92 N. E. 2d 734.

It is the opinion of this court that there was a total lack of evidence as to the question of negligence on the part of the defendant. We do not see how negligence can be predicated on the failure to inspect alone without a further showing of what such an inspection could have revealed. Nor do we find any evidence tending to establish a causal relationship between the alleged negligence of defendant and the subsequent injuries to the plaintiff. We therefore hold that the trial court should have directed a verdict for the defendant at the close of the evidence. Failure to do so was error.

Judgment is therefore reversed with instructions to the trial court to sustain defendant's motion for directed verdict at the close of the evidence.

Prime, C. J. and Faulconer, J. concur.*

Wickens, J. not participating.

* While Judge Martin participated in the hearing of oral argument and a conference of the judges above named, he was not present at the time of, and did not participate in, the adoption of this opinion.