CHARLES AND MARY ANDERSON *v.* J. C. PENNEY COMPANY, INC.

[No. 270A22. Filed September 2, 1971. Consolidated.]

*Archie Lapin Law Office,* of Muncie, *John T. Cook,* of Winchester, for appellant.

*Marshall E. Hanley, Bracken, DeFur, Voran & Hanley,* of Muncie, *Rex McCoy, Hunter, McCoy & Sullivan,* of Union City, for appellee.

WHITE, J.—Early on the morning of October 16, 1965, the plaintiffs-appellants' eleven year old son awoke to find his bed on fire. It had been covered with an electric blanket, which was turned on when he went to sleep the night before. His father had purchased the blanket from defendant-appellee, J. C. Penney Co., Inc., on November 9, 1964, (along with two other electric blankets used by others in the family). His parents sued in breach of warranty[1] to recover for the fire and smoke damage to their home. At the conclusion of the plaintiff's evidence the trial judge directed the jury to return verdicts for the defendant because the "plaintiffs . . . failed to present evidence as to the cause of the fire in the electric blanket . . . and . . . failed to present evidence that the

---

1. Mr. and Mrs. Anderson each filed a separate suit. The venue of each action was changed on defendant's motion from Delaware to Randolph County. The Randolph Circuit Court, on its own motion, consolidated the actions.

electric blanket . . . was defective when it left defendant's control. . . ."

When he overruled appellants' motion for new trial the trial judge wrote an opinion, in parts of which he said:

"Plaintiffs' motions for new trial present for decision the question of whether or not the Court erred in instructing the jury to return a verdict for the defendant at the close of plaintiffs' evidence in these causes, which had been consolidated for purposes of trial. Plaintiffs, in their motions, contend that from the evidence which they adduced 'the jury could *reasonably* have inferred that a *defect in the blanket caused the fire, and that said defect existed at the time the blanket was purchased.*'

"Thus, the sole question presented by the motions for new trial is whether or not the evidence was sufficient to permit the jury to reasonably infer that a defect in the blanket caused the fire and that said defect existed at the time the blanket was purchased.

\*   \*   \*

[Here we omit his comprehensive resume of products liability law and comments to the effect that the burden of proving a defect in the product at the time of delivery rests on the plaintiff, with citation of authority.]

"In products liability cases, as in other areas of the law, a fact may be proven by direct or circumstantial evidence, and, thus, the existence of a defect at the time of sale may be proven by circumstantial evidence. *Elmore* v. *American Motors Corp.* (1969), 75 Cal. Reports 652; 451 Pac. 2d 84.

"However, the circumstantial evidence must be sufficient to permit a reasonable inference that such defect existed at the time of sale. In the *Elmore* case, expert opinion evidence, as well as physical markings upon a roadway, furnished the basis for a reasonable inference that the defect existed at the time of sale.

\*   \*   \*

"In *Prudential Insurance Company of America* v. *Van Wey* (1944), 223 Ind. 198, 59 N. E. 2d 721, the Supreme Court of Indiana stated as follows:

" 'While ultimate facts may be established by direct or circumstantial evidence and by inferences properly drawn

from such evidence yet neither courts nor juries have any right to presume any fact in issue which they are called upon to determine . . . That ultimate fact must be established by evidence or proper inferences to be drawn from evidence. A finding as to this fact cannot be based upon conjecture, speculation or guess . . . and the mere possibility that it may be true will not properly sustain an inference that it is true . . .' (223 Ind. 203, 204) Accord: *Kaiser* v. *Happel* (1941), 219 Ind. 28, 33, 36 N. E. 2d 784.

"In *Pittsburgh, etc. Railway Company* v. *Hoffman* (1914), 57 Ind. App. 431, 107 N. E. 315, the Appellate Court of Indiana stated:

" 'Where, in a civil suit, the solution of a problem in controversy depends on circumstantial evidence, if the circumstances agree with and support the hypothesis, they are adduced to prove, the circumstances are sufficient to that end. In such cases, reasonable probability is the rule . . .' (57 Ind. App. 449)

\* \* \*

"In the case at bar, the Court directed the jury to return a verdict for the defendant at the close of the plaintiffs' evidence because the plaintiffs adduced no evidence to show what the cause of the malfunction or fire was, which occurred in the electric blanket on October 11, 1965, and there was no evidence from which the jury could find that the cause of the fire was defect which existed in the blanket at the time of its purchase from the defendant nor that the loss and damages complained of by the plaintiffs proximately resulted from a defective condition which existed in the blanket at the time it left the defendant's control.

"In the case at bar, the evidence presented by plaintiffs disclosed that the electric blanket had been given by plaintiffs to their eleven year old son, Charles, as a Christmas present in 1964, and that the blanket was in his room from the time the blanket was given to him until the time of the fire on October 18, 1965, except when it was put away from use during the summer months. Mrs. Anderson, on cross-examination, testified that Charles' bedroom was in the basement of their home, which she described as a private room all to his own. There were a television set, sofas, couches, tables, chairs and a stove and refrigerator in the basement. The furniture was arranged in such a way that 'it made the bedroom more private.' Whenever friends visited Charles, he would take them down to his room in the

basement where they might watch TV. Also, in the basement was a shuffleboard and toys at one end. Children normally went down in the basement to play games and spend their leisure time.

"According to Mrs. Anderson, Charles kept no bedspread on his bed and the electric blanket was spread out on top of his bed daily each day when she made the beds. During the time the children were in the basement, the electric blanket would be on Charles' bed.

"Although Charles was the member of the family that ordinarily used the blanket, yet he gave no testimony whatsoever describing the manner in which he used the blanket. He did not testify that he used the electric blanket in the manner provided by defendant's instructions, and he not negate abnormal use, maltreatment or abuse or misuse of the blanket, either by himself or others permitted in the basement. The other two children in the home were not asked to negate maltreatment of the electric blanket involved in the case at bar.

"The case at bar presents a situation analogous to that before the Supreme Court of California in the case of *Trust* v. *Arden Farms Company* (1958), — Cal. —, 324 Pac. 2d 583, where damages were sought from a milk company and bottle manufacturer for injuries sustained when a bottle containing skim milk broke in the plaintiff's hand. The skim milk bottle was identified for the children by a band placed around the neck of the bottle by plaintiff. The Supreme Court of California observed and stated as follows:

" 'From the foregoing evidence, it is clear that any of plaintiff's three children, having as they did access to the refrigerator at all times, may have struck the bottle of skim milk with another bottle and damaged it prior to the time of the accident, or it may in some other manner or fashion have been damaged.

" 'The children were not called as witnesses to negate maltreatment of and damage to the bottle by them prior to the time of the accident. Plaintiff's husband, who also had access to the refrigerator, was called as a witness, but he made no attempt to show that the bottle had not been damaged after it had been received and prior to the time of the accident.

" 'From the foregoing evidence it is clear that the above stated rule was not met in the present case and that there is a complete hiatus as to what, if anything, happened to the bottle between the time it was placed in the refrig-

erator by plaintiff and the time the injury occurred.' (324 Pac. 2d 586).

"In the case before the California Court, the action had been brought on the theory of both negligence and breach of warranty. The Court held that the doctrine of res ipsa loquitur was inapplicable to the facts of the case, and that there was no evidence that the bottle was defective when delivered to plaintiff, and that, therefore, there was no basis for claiming any breach of warranty.

"In the case at bar, the plaintiffs alleged that the defendant warranted that the electric blanket was 'merchantable and fit for the ordinary purposes for which said blanket was to be used.' The member of the family that ordinarily used the electric blanket gave no testimony whatsoever concerning the manner in which the blanket was used. Plaintiffs, in their motions for new trial, assert that the evidence shows that the blanket was used for purposes for which it was intended in plaintiff's home, and that the evidence 'showed that all of the defendant's instructions were followed.' The fact is that the member of the family that ordinarily used the electric blanket gave no testimony concerning the manner in which he used the blanket, or respecting the instructions followed.

"In plaintiffs' motions for new trial, plaintiffs assert that the evidence shows that the 'blanket caused the fire and the evidence also shows that nothing else could have caused the fire.' In the opinion of the Court, there is no question but that the evidence shows that the blanket caused the fire that occurred in the home of the plaintiffs on October 18, 1965. The question which remains is: Was the cause of the said fire a defect which existed in the blanket at the time the defendant sold it, or was there some other cause for the fact that the blanket malfunctioned and caught on fire on said date, such as maltreatment, misuse of the blanket, or some cause for which the defendant would in no way be responsible? The remains of the blanket, removed from the basement by the Fire Department, were not examined. Whether or not an examination would have disclosed that a manufacturing defect, as distinguished from some other cause, was the cause of the fire, is, therefore, purely speculative. Apparently no attempt was made to determine how the blanket caught on fire. No expert testimoney was adduced to show that the fire was probably caused by a manufacturing defect, as distinguished from some other possible cause. From the evidence, all told, it is possible to speculate that any number of causes could have

been responsible for the fire, and there is really no evidence by which the jury could determine what, in truth, was the cause of the fire. Had the case been permitted to go to the jury, upon the evidence adduced, the jury would have had to make its decision based on speculation, surmise or guess, and not evidence.

"This would be true whether or not the theory of the complaint was considered as strict liability in tort or breach of express or implied warranty. Under any theory, the plaintiffs' case would fail as there was no probative evidence either of a defect, breach of warranty, or merchandise of unmerchantable quality."

The trial court opinion makes no mention of testimony which plaintiffs contend was sufficient to sustain a reasonable inference that the fire in the blanket resulted from a defect which existed at the time the blankets were purchased.

Mrs. Anderson testified that she read the instructions before using the blankets and was familiar with the guarantee and instruction slip that had been admitted into evidence, which were the only instructions that came with the blankets. She and Mr. Anderson instructed the children in the use of the blankets, cautioning them not to use pins or wrestle on the beds. The blankets were never used on infants, helpless people or a person insensitive to heat. The wired area of the blanket was never tucked in. The blankets were placed on the beds in a normal manner, straightened up and snapped at the corner. Pins were never used on the blankets, nor was the control box ever placed near an open window or a radiator. She made the beds and never found the blankets left turned on. They were never folded during use, never washed or dry cleaned, nor were cleaning fluids or liquids used. No improper operation was noticed until the fire. She also testified as to the summer storage of the blankets.

Mr. Anderson's testimony in this respect was similar to Mrs. Anderson's, though not so detailed.

Mr. and Mrs. Anderson's testimony did not negate all possi-

bility of misuse of the blanket since the boy, his sister, and his juvenile guests all had access to it when the parents were not present. It may be reasonable to infer, on the basis of that bit of old wives' lore which decrees that boys will be boys, that there was some abuse of this blanket. Or stated differently, it may be reasonable to infer that the possibility of abuse is just as likely an explanation for the malfunction as is the possibility of a defect present at delivery. That inference, if drawn by the trier of fact, would require judgment for the defendant. But that inference does not arise from this evidence as a matter of law. If drawn it must be drawn by the trier of fact.

As previously pointed out, we believe there is evidence from which the jury could just as reasonably have inferred that the Anderson boy and his guests behaved; that Mr. and Mrs. Anderson's instructions were followed, and that it was more likely that the malfunction resulted from a defect present at delivery than that it resulted from abuse.

Nor does the failure of counsel to give the boy the opportunity to specifically deny misuse and abuse render the inference of proper care so unreasonable that it must be rejected as a matter of law (even though as a matter of fact the trier of fact might reasonably decide to reject it).

Early in his opinion the trial judge quoted *Pittsburgh, etc. Railway Company* v. *Hoffman* (1914), 57 Ind. App. 431, 449, 107 N. E. 315, 321, to the effect that "reasonable probability is the rule" in civil cases in which circumstantial evidence is relied on to prove an issue. As more fully stated in *Indianapolis, etc. R. Co.* v. *Collingwood* (1880), 71 Ind. 476, 477, the rule is: "It is only necessary in civil cases, that the circumstantial evidence should 'agree with and support the hypothesis which it is adduced to prove,' and, to quote again from Prof. Greenleaf, 'it is not necessary that the minds of the jurors be freed from all doubt; it is their duty to decide in favor of the party on whose side the weight of the evidence

preponderates, and according to the reasonable probability of truth.' 1 Greenl. Ev., sec. 13 a."

There is at least a trace of what the layman would call "guesswork" in every finding of fact made in every judicially litigated controversy, civil or criminal. Even in criminal cases where proof of guilt must be beyond a *reasonable* doubt, doubts which are less than reasonable do not justify acquittal.[2] But when circumstantial evidence is relied on in criminal cases to prove a point, the circumstances proved must be sufficient to exclude every other reasonable hypothesis.[3] Not so, however, in a civil case where it is necessary only "that the circumstantial evidence should agree with and support the hypothesis it is adduced to prove."[4] If the greater weight, the reasonable probability, lies with the party on whom rests the burden of proof, the issue should be resolved in his favor even though a reasonable doubt remains.[5]

The criminal law requirement of proof beyond a reasonable doubt is corollary to the presumption of innocence. Circumstantial evidence is insufficient to rebut the presumption of innocence unless it excludes every reasonable hypothesis consistent with innocence. The quantum of proof the trial judge would require here is tantamount to imposing a presumption of misuse or abuse and holding that it can be rebutted by circumstantial evidence only if that evidence is sufficient to exclude every reasonable hypothesis consistent with the presumption of misuse. That would be to impose a criminal law burden of proof in a civil case.

The plaintiffs' evidence tending to prove that the blanket was expressly warranted for a period of five years; that it

2. *Jacoby* v. *State* (1936), 210 Ind. 49, 52, n. 5, 199 N. E. 563.

3. *Goff* v. *State* (1929), 89 Ind. App. 307, 310, 166 N. E. 262.

4. *Pittsburgh, etc. Railway Company* v. *Hoffman* (1914), 57 Ind. App. 431, 449, 107 N. E. 315; *Kempf* v. *Himsel* (1951), 121 Ind. App. 488, 516, 98 N. E. 2d 200.

5. *Kempf* v. *Himsel* (1951), 121 Ind. App. 488, 516, 98 N. E. 2d 200, 212; *Phegley* v. *Huffman* (1971), 149 Ind. App. 100, 271 N. E. 2d 201, 26 Ind. Dec. 118, 123.

caught fire while in proper use well before the expiration of that period; and that the seller's instructions for use and care were followed, were sufficient to take the case to the jury on the question of whether the defect which resulted in the malfunction existed at the time Mr. Anderson brought it home from defendant's store. If the jury had been permitted to make its own decision and had rendered a verdict which the trial judge was satisfied was against the manifest weight of the evidence, it would have been his duty to grant a new trial.[6] But that is as far as the Indiana cases go in sanctioning any frustration of a litigant's constitutional right to have the issues of fact in his case tried by jury when he has properly invoked that right[7] and has adduced some substantial evidence of probative value tending to prove every issue on which he carries the burden of proof.[8]

For the reasons stated the judgment is reversed and the cause remanded with instructions to the trial court to grant plaintiff's motion for new trial and for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded with instructions.

Hoffman, C.J., Sharp and Staton, JJ., concur.

NOTE.—Reported in 272 N. E. 2d 621.

---

6. *Bailey* v. *Kain* (1963), 135 Ind. App. 657, 662, 192 N. E. 2d 486; *Novak* v. *Chicago & Calumet District Transit Company* (1956), 235 Ind. 489, 497, 135 N. E. 2d 1.

7. *Hayworth* v. *Bromwell* (1959), 239 Ind. 430, 158 N.E.2d 285.

8. Even that limited power to interfere has been questioned. See dissenting opinion, *Collins* v. *Grabler* (Ind. App. 1970), 263 N. E. 2d 201, 209.