PETER MAMULA *v.* FORD MOTOR COMPANY.

[No. 371A49. Filed December 6, 1971. Rehearing denied December 30, 1971. Transfer denied May 7, 1973.]

*Joseph G. Ettl, Ettl & Ettl, Richard C. Kaczmarek,* all of South Bend, for appellant.

*James H. Pankow,* of South Bend, for appellee.

BUCHANAN, J.—*STATEMENT OF THE CASE AND FACTS*—This is an appeal of a personal injury products liability case from a directed verdict entered for the defend-

ant-appellee, Ford Motor Company (Ford),. at the close of plaintiff's evidence. .

In December of 1964, .plaintiff-appellant, Peter Mamula (Mamula) purchased a new 1965 Ford Ranch Wagon. Only routine service was required thereafter except for replacing the left shock absorbers twice and the clutch once.

On May 28, 1967, at 3:30 A.M., the Ranch Wagon had been driven about 21,600 miles. At that time Mamula was a passenger in the car while it was being driven south on the Mackinac Bridge by one Ted Szabo (Szabo). Suddenly, the car began to bounce wildly. Szabo testified that he lost complete control of the steering. The car veered sharply to the right striking the guard rail and the concrete median strip of the bridge, resulting in bodily injury to Mamula.

When it came to a halt, another passenger, Willis Bradway (Bradway), found the right front tie rod assembly about 120 feet to the rear of the car. Bradway testified that the ball-joint of the tie rod was snapped off flush with the socket. The tie rod was wrapped in a rag and retained by Mamula until December 20, 1967, when he delivered it to a Ford service representative for inspection. The service representative found no visible defect, so he sent the tie rod to Ford's facilities in Allen Park, Michigan, where it subsequently was lost and so not available at the trial.

Mamula brought an action against Ford alleging negligence in that: (1) Ford failed to properly inspect the car's right front tie rod assembly; (2) Ford used inferior metal in manufacturing the tie rod; and (3) Ford failed to properly install the assembly.

Mamula's expert witness, George Rohrback, testified that a broken tie rod assembly could cause this type of an accident, but that other factors could also be a cause.

At the close of Mamula's presentation of evidence, the lower court granted Ford's Motion for a Directed Verdict. Mamula now appeals.

*ISSUE*—Was there any evidence of negligence or a reasonable inference thereof which could have been the basis for submitting the case to a jury?

Mamula contends that the accident was caused by the tie rod breaking. Since the testimony of Bradway and Rohrback supported this assertion, a question of fact for the jury arose.

Ford contends that Mamula's evidence produced nothing more than conjecture. Accordingly, the case was properly taken from the jury.

*DECISION*—It is our opinion that there was a reasonable inference of negligence to be drawn from the conflicting evidence. Consequently, the case should not have been taken from the jury.

This court has recently held in *Rouch* v. *Bisig* (1970), 147 Ind. App. 142, 258 N. E. 2d 883, that:

> "On appeal we will consider only the evidence most favorable to the party against whom the motion for directed verdict was made and all reasonable inferences from such evidence. *Layman* v. *Hall Omar Baking Co.*, 138 Ind. App. 673 [7 Ind. Dec. 459], 213 N. E. 2d 726, rehearing denied [8 Ind. Dec. 186], 215 N. E. 2d 692 (1966); *Monon R. R.* v. *New York Central R. Co.*, 141 Ind. App. 277 [10 Ind. Dec. 644], 227 N. E. 2d 450 (1967); and *Beem* v. *Steel*, 140 Ind. App. 512 [10 Ind. Dec. 158], 224 N. E. 2d 61 (1967)."

The quantum of evidence necessary for a plaintiff to avoid a directed verdict at the close of his evidence has been determined by our Supreme Court to be *any* evidence or legitimate inference therefrom tending to support at least one of the plaintiff's allegations. Specifically, our Supreme Court held in *Hendrix* v. *Harbelis* (1967), 248 Ind. 619, 623, 230 N. E. 2d 315, that:

> "It is only where there is a *total absence of evidence* or legitimate inferences in favor of plaintiff upon the issues, or where the evidence is without conflict and is susceptible of but one inference and that inference in favor of the

defendant, that the court may give a peremptory instruction . . . ." (Emphasis supplied.)

Likewise, it was held in *Sears v. Moran* (1945), 223 Ind. 179, 181, 59 N. E. 2d 566, that:

"[I]f there is any *evidence or reasonable inference,* that can be drawn from the evidence, . . . the disputed position will be deemed sufficiently proven." (Emphasis supplied.)

See also *Watson v. Watson* (1952), 231 Ind. 385, 108 N. E. 2d 893; *Gamble v. Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629.[1]

The rule is often stated to be that in a jury trial a court should not direct a verdict for a defendant at the close of a plaintiff's evidence unless there is a total absence of evidence or reasonable inference on at least one essential element of a plaintiff's case. *Hendrix v. Harbelis, supra; Whitaker v. Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734; *Ecoff v. Central Indiana Gas Co.* (1968), 143 Ind. App. 119, 238 N. E. 2d 676; *Stivers v. Old National Bank in Evansville* (1970), 148 Ind. App. 196, 264 N. E. 2d 339; *Rouch v. Bisig, supra.*

When passing on a motion for a directed verdict, the court is merely called on to determine if there is *some* evidence of negligence on the part of the defendant which the jury is entitled to consider. *Jones v. Furlong* (1951), 121 Ind. App. 279, 97 N. E. 2d 369. *Where the evidence is such that the minds of reasonable men might differ,* or if the determination of negligence depends on conflicting evidence, then the question is for the jury. *Hatmaker v. Elgin, Joliet*

---

1. In passing we comment on an apparent difference in the quantum of evidence necessary to avoid a directed verdict against the plaintiff and a dismissal of his complaint in a court trial. Rule TR. 50(A), applicable to cases tried before a jury, requires only *sufficient evidence* for plaintiff to avoid a directed verdict. On the other hand, Rule TR. 41(B), applicable to a case tried before the court without a jury, requires *substantial evidence* of probative value for a plaintiff to avoid dismissal. The words "no substantial evidence of probative value" were inserted into Rule TR. 41(B) when the Rule was revised on January 1, 1970 and thereby created the apparent difference referred to above. The use of the word "substantial" does, in our opinion, create confusion because "sufficient evidence" and "substantial evidence" are not identical concepts. As the case before us was tried to a jury, we need not consider this conflict, if such it be, between the two Rules.

*& Eastern Railway Company* (1956), 126 Ind. App. 566, 133 N. E. 2d 86; *Heiny* v. *Pennsylvania Railroad Company* (1943), 221 Ind. 367, 47 N. E. 2d 145; *Robertson Brothers Department Store* v. *Stanley* (1950), 228 Ind. 372, 90 N. E. 2d 809; *Haney* v. *Meyer* (1966), 139 Ind. App. 633, 215 N. E. 2d 886; *Oliver* v. *Clemons' Estate* (1968), 142 Ind. App. 499, 236 N. E. 2d 72.

Therefore, a directed verdict is proper only when the evidence is without conflict and is susceptible of but one inference in favor of the moving party. *State Farm Life Ins. Co.* v. *Spidel* (1964), 246 Ind. 458, 202 N. E. 2d 886; *Gibson* v. *Froman* (1965), 138 Ind. App. 497, 212 N. E. 2d 25; *Mitchell* v. *Smith* (1965), 138 Ind. App. 93, 211 N. E. 2d 809; *Reynolds* v. *Langford* (1961), 241 Ind. 431, 172 N. E. 2d 867.

Certain Indiana Appellate Court decisions in recent years have seemed to hold that there must be a total lack of *substantial* evidence to obtain a directed verdict. *Richey* v. *Sheaks* (1967), 141 Ind. App. 423, 228 N. E. 2d 429; *Layman* v. *Hall Omar Baking Co.* (1965), 138 Ind. App. 673, 213 N. E. 2d 726; *Sparks* v. *Baldwin* (1964), 137 Ind. App. 64, 205 N. E. 2d 173; *Bradford* v. *Chism* (1963), 134 Ind. App. 501, 186 N. E. 2d 432. Other language with essentially the same meaning as "substantial" has also been used, such as "substantial evidence of probative value" or "more than a scintilla or suspicion." We think any conflict between these cases and the standard defined by our Supreme Court, *i.e.*, "any evidence" is more apparent than real. A close examination of these cases indicates lip service to the "substantial" test while applying the "any evidence" rule in result. Through frequent usage aged concepts often become encrusted with unrelated layers of distortion which must be broken away from time to time. This is such an occasion.

Although we find no Supreme Court civil cases using language similar to "substantial", our attention has been directed to two cases which seemingly use the "substantial" test. *Echterling* v. *Kalvaitis* (1955), 235 Ind. 141, 126 N. E.

2d 573; *McCague* v. *New York, Chicago & St. Louis Railroad Co.* (1946), 225 Ind. 83, 71 N. E. 2d 569. *Echterling, supra,* does say that there must be substantial evidence of probative value to sustain the decision of the court below, but it can be distinguished because it does not deal with the quantum of evidence necessary for a directed verdict. It deals with that evidence necessary for a trial court to enter a *final* judgment. Likewise, *McCague, supra,* deals with the weight and sufficiency of evidence required to uphold a final jury verdict, not a directed verdict.

Directing a verdict against a plaintiff at the close of his evidence deprives him of a jury decision. He may well feel robbed of what he considers a sacred right of his American heritage. While this right is not absolute in a civil case,[2] the cases cited herein support the rule that whenever there is *any* evidence allowing reasonable men to differ, a plaintiff should be given the benefit of the doubt, even though he has not *substantially* supported his allegations. Furthermore, such a requirement is not weighing the evidence —it merely allows a jury to decide whether negligence exists.

What harm can result from permitting a plaintiff a jury decision when a *reasonable* inference from the evidence exists in his favor? The trick is to determine what constitutes a "reasonable inference" and what is mere conjecture or speculation. To require an issue to be submitted to the jury, there must be something more than a mere scintilla of evidence. *Hollowell* v. *Greenfield* (1966), 142 Ind. App. 344, 216 N. E. 2d 537. This can only be accomplished by an examination of the circumstances of a particular case.

In *International Harvester Co.* v. *Sharoff*, 202 F. 2d 52 (10th Cir. 1953), a truck manufactured by the defendant, Harvester, mysteriously overturned during normal use. The

---

2. Confusion has resulted in attempting to apply the quantum of evidence in a criminal case to civil cases. However, the "substantial" test as used in criminal cases is not applicable to civil cases because there is a different burden of proof.

plaintiff brought an action against Harvester for failure to inspect the truck, particularly the torque rod and springs. It was admitted by Harvester that only a visual inspection was made, but that lack of inspection alone was not sufficient evidence for a jury to infer negligence.

Like *Harvester*, the case before us also alleges a failure to inspect on the part of Ford with an unexplained accident resulting. Unlike *Harvester*, however, an expert witness testified for Mamula as to the possible cause of the accident. Despite the lack of direct evidence as to the cause of the accident in *Harvester*, the case was allowed to go to the jury on the question of whether Harvester properly discharged its duty of inspection.

Conversely, in *Halkias* v. *Gary National Bank* (1968), 142 Ind. App. 329, 234 N. E. 2d 652, the plaintiff slipped on a piece of ice on the sidewalk in front of the defendant's bank building. No evidence was presented as to how the ice came to be on the sidewalk other than the defendant's employees' attempt to remove some ice and snow on the sidewalk earlier that day. In affirming a directed verdict against the plaintiff, this court held that the evidence presented could not support a reasonable inference of negligence because it would require a jury to speculate or guess as to the proximate cause of the accident.

We think *Halkias* is distinguishable. In that case, there was *no duty* on the part of the defendant to rid its sidewalk of the ice and snow, whereas in the instant case Ford is bound by the duty defined in *MacPherson* v. *Buick Motors Co.* (1916), 217 N. Y. 382, 111 N. E. 1050. No evidence was presented in *Halkias* that the defendant was even responsible for the ice being there, whereas Ford was in fact connected with Mamula's car as Ford was the manufacturer. Furthermore, the court stated that there was no showing that the acts of the defendant made the sidewalk more slippery or hazardous than it would have been if the defendant had not attempted to remove the ice. Not so with regard to Mamula's automobile,

because there was expert testimony that the automobile would be unsafe without the tie rod assembly. *Halkias* presents only an unexplained circumstance. No more.

In reviewing the evidence presented by Mamula, it is apparent that it is not such as would support only a single inference in favor of Ford. On the contrary, a conflict exists from which a reasonable man could justifiably infer negligence. Szabo testified that *before* the accident occurred, he lost control of the steering. An essential element for steering, to-wit, the tie rod, was found 120 feet *behind* the car. Whether this tie rod fell off first, thereby causing the accident, or whether the accident itself caused the tie rod to fall off, is not known. The same question was raised in *International Harvester Co.* v. *Sharoff, supra,* in which the court said:

> "We are also of the view that there was sufficient evidence to take the case to the jury on whether the breaking of the parts caused the accident or were the results of the accident."

Mamula's expert witness, Professor Rohrback, testified that a broken tie rod could cause this type of accident, thereby dispelling speculation or conjecture, if believed by the jury. Willis Bradway testified that the tie rod was broken. Yet Ford's service representative claims to have found no visible defect.

This court held in *Hummel* v. *New York Central Railroad Co.* (1946), 117 Ind. App. 22, 66 N. E. 2d 901, that:

> "[W]e may not weigh the testimony of one witness against the conflicting testimony of another, nor may we weigh conflicting portions of the testimony of the same witness. If the same witness makes contradictory assertions, we will not undertake to determine which of the assertions are true, *that being a question for the jury.*" (Emphasis supplied.)

One of these facts alone may not present a reasonable inference of negligence. Viewed as a whole, there is some evidenc from which negligence on the part of Ford may be reason-

ably inferred. The door of the jury room should have been opened just wide enough to allow plaintiff's frail case to submit itself to the jury for examination. The question was one for the jury.

The decision of the trial court is therefore reversed and remanded for a new trial.

Lowdermilk and Robertson, JJ., concur; Sullivan, P.J., dissents with opinion.

## DISSENTING OPINION

SULLIVAN, P. J.—I concede that the "any evidence" rule espoused by the majority is much more easily applied at the trial level with reference to directed verdicts in that the quantum required to meet the test is easily measured, and although the rigidity of that rule points up the ethereal subjectivity of a "substantial evidence" test, which can vary unpredictably from judge to judge, I nevertheless feel that a trial judge should and must direct a verdict if, as a matter of law, the evidence then of record would not support a contrary verdict.

Evidence sufficient to submit a cause to the jury must necessarily be sufficient to support a verdict. *Underwood* v. *Ferguson* (1956), 126 Ind. App. 643, 133 N. E. 2d 573. Conversely, evidence which would not be sufficient to support a verdict should not be held sufficient to permit submission of the cause to the jury for possible rendition of a verdict which would be clearly erroneous, i.e., not supported by substantial evidence.

In *Kleinschmidt* v. *Clark, Admx.* (1968), 143 Ind. App. 99, 104, 238 N. E. 2d 473, this court, speaking through Judge Smith, stated:

"In the case of *Burke* v. *Burke* (1963), 135 Ind. App. 235, 191 N. E. 2d 530, and cases cited therein, our court held in substance that the material allegations of a complaint sounding in tort and based on specific acts of negligence essential to recovery are required to be supported by *sub-*

*stantial evidence* as differentiated from a mere *scintilla of evidence*. In this case, the trial court sustained a motion for a directed verdict and the question on appeal was whether there was *substantial evidence* which required the submission of the case to the jury."

It, therefore, clearly appears that Indiana, as opposed to states such as South Carolina, does not follow a "scintilla" rule.[1]

The majority here would at first blush appear to be in agreement with the *Kleinschmidt* statement, for my brothers, citing *Hollowell et al.* v. *Greenfield by Next Friend* (1966), 142 Ind. App. 344, 353, 216 N. E. 2d 537, say: "To require an issue to be submitted to the jury, there must be something *more* than a mere scintilla of evidence." (Emphasis supplied) The statement made by the majority herein appears in the *Hollowell* opinion, interestingly also written by Judge Smith. Surprisingly, however, Judge Smith, notwithstanding his very lucid and unambiguous statement in the *Kleinschmidt* case, *supra*, proceeded in fact to apply a scintilla doctrine to the evidence of record in the *Hollowell* case. At best, the language in *Hollowell* appears to define "scintilla" as "none" and "more than a mere scintilla" as "any." This conclusion is drawn from a reading of the complete statement made in *Hollowell* as follows:

"However, to require an issue to be submitted to the jury there must be something more than a mere scintilla of evidence and a party is not entitled to go to the jury on a fact where there is *no* evidence on which the jury can in any justifiable view find for the party producing it." 142 Ind. App. 344, 353-354 (Emphasis supplied)

It is my belief that the majority in the case before us, like the court in *Hollowell*, acknowledges the inapplicability of the scintilla doctrine, yet like the court in *Hollowell* mistakenly

---

1. "Under the scintilla rule which prevails in South Carolina, if there is a scintilla of evidence, which is *any* material evidence that, if true, would tend to establish the issue in the mind of a reasonable juror, the case should be submitted to the jury for its determination." *Scott* v. *Meek* (1956), 230 So. C. 310, 95 S.E. 2d 619, 621. (Emphasis supplied)

utilizes the scintilla rule in reviewing the verdict directed below. I say "mistakenly" for the reason that the "any evidence" rule herein applied is in fact a scintilla rule, as demonstrated by *Wadkins' Adm'x* v. *Chesapeake & Ohio Railway Co.* (1956 Ky.), 298 S. W. 2d 7, 9:

> "Clearly and expressly the Nugent case abolished what was known as the 'scintilla' rule, which in substance was that *any* evidence supporting the plaintiff's cause required submission to the jury."

The Indiana law as I understand it is more in keeping with that stated in *McVay* v. *American Radiator & Standard S. Corporation* (W.D. Pa. 1941), 1 F. R. D. 677, 678, quoting from *Gunning* v. *Cooley* (1930), 281 U. S. 90, 94:

> " 'A mere scintilla of evidence is not enough to require the submission of an issue to the jury. The decisions establish a more reasonable rule "that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." ' "

The rule is similarly stated in *Holstein* v. *Benedict* (1915), 22 Haw. 441, 445:

> "To amount to more than a mere scintilla the evidence must be of a character sufficiently substantial, in view of all the circumstances of the case, to warrant the jury, as triers of the facts, in finding from it the fact to establish which the evidence was introduced."

In short, the word most accurately describing that evidence which is "more than a mere scintilla," is "substantial." *United States* v. *Krumsiek* (1st Cir. 1940), 111 F. 2d 74 at 78.

It seems very basic then that since a jury verdict must be supported by substantial evidence of probative value, *Kleinschmidt* v. *Clark, Admx., supra,* a directed verdict is not only appropriate but required if there is not substantial evidence on each essential element of plaintiff's claim. It thus appears

that the "any evidence" or scintilla rule creates a flagrant, though admittedly workable, inconsistency in the review of evidentiary determinations. I therefore advocate the continuing application of the "substantial evidence" test in examining directed verdicts as set forth in *Anderson* v. *J. C. Penney Co.* (1971), 149 Ind. App. 325, 272 N. E. 2d 621, and *Szlafrak* v. *Donaldson* (1971), 149 Ind. App. 200, 271 N. E. 2d 170.

In this connection, I am unable to agree with the majority's supposition that appearance of the word "substantial" in the reported cases has been inadvertent and that the Indiana courts in truth and fact have always applied an "any evidence" test. In *Richey* v. *Sheaks* (1967), 141 Ind. App. 423, 435, 228 N. E. 2d 429, this court quoted from *Sparks* v. *Baldwin* (1965), 137 Ind. App. 64, 205 N. E. 2d 173, as follows:

> " 'The law is that "a verdict should be directed where there is a total lack of *substantial evidence of probative value,* a total lack of evidence not being required." Flanagan, Wiltrout and Hamilton Indiana Trial and Appellate Practice, 1963, Pk. Supp. Sec. 1661, Comment 1.' "

Aside from my semantic warfare with the majority viewpoint, I also take issue with the result obtained in that opinion. The evidence adduced below and as set forth by the majority here is wholly insufficient to support a verdict for plaintiff. The mere fact that the driver of plaintiff's vehicle suddenly lost steering control, that the car struck the guard rail and median strip, and that the severed tie rod was found behind the point at which the vehicle came to rest does not in my view permit a reasonable inference that defendant either failed to properly inspect the tie rod assembly, or used inferior metal in manufacturing it, or failed to properly install it. A verdict for plaintiff upon such state of facts would necessarily be premised upon surmise, conjecture and speculation and would therefore be erroneous. *Halkias* v. *Gary National Bank* (1968), 142 Ind. App. 329, 234 N. E. 2d 652;

*Hunnicutt* v. *Boughner* (1967), 141 Ind. App. 669, 231 N. E. 2d 159; *Haney* v. *Meyer* (1966), 139 Ind. App. 663, 215 N. E. 2d 886. In *Foster* v. *New York Central System* (7th Cir. 1968), 402 F. 2d 312, 313, the Seventh Circuit Court of Appeals considered the *Halkias* case, *supra,* and correctly interpreted Indiana law as follows:

> "The courts of Indiana and this Circuit, in interpreting Indiana law, have held that when a plaintiff cannot show the manner in which the accident took place, the unexplained circumstances do not permit the jury to speculate or draw inferences as to the occurrence. The most recent decision of which we are aware is *Iwaniuk* v. *Bethlehem Steel Corporation,* 402 F. 2d 309. In that case, the plaintiff was able to prove only that the decedent was seen walking on an allegedly defective catwalk, and was next seen lying on the ground beneath it. This Court reversed a jury verdict for the plaintiff stating: 'The total absence of evidence as to the cause of plaintiff's decedent's fall compels the conclusion, under the Indiana law, that plaintiff failed to sustain the burden of proof on the issue of negligence and of proximate cause.' In holding that the jury must have engaged in speculation and conjecture in determining the manner in which the plaintiff fell, this Court cited *United States Steel Corporation* v. *Cicilian,* 133 Ind. App. 249, 180 N. E. 2d 381, 181 N. E. 2d 538 (1962), for the proposition that 'such "unexplained circumstances" do not permit the drawing of inferences.'

> "Also cited in Iwaniuk was *Halkias* v. *Gary National Bank,* [142] Ind. App. [329] 1968, 234 N. E. 2d 652, 655 (1968), where the court cited a number of Indiana cases for the proposition that, 'It is well settled that a decision or finding must be based upon the proven facts and cannot be based upon mere guess, conjecture, surmise, possibility or speculation.' The *Halkias* court affirmed the granting of a directed verdict where the plaintiff, who had fallen on ice in front of defendant's bank, could prove only that there had been ice on the sidewalk and that defendant's employees had been attempting to remove the ice. Since there were other conditions present which could have led to several equally speculative conclusions, the Court held that '[a]ppellant's cause of action cannot be established by the drawing of such liberal inferences as would be necessary to take the case to the jury.' 234 N. E. 2d at 655."

The majority herein places great reliance upon *International Harvester Co.* v. *Sharoff* (10th Cir. 1953), 202 F. 2d 52, in support of submission of the cause here considered to the jury. The *Harvester* case, it should be noted, involves an interpretation of Colorado, not Indiana, law. Further, the following recitation from *Harvester* clearly shows its factual dissimilarity from our circumstance:

> "We are also of the view that there was sufficient evidence to take the case to the jury on whether the breaking of the parts caused the accident or were the result of the accident. [Plaintiff] relied upon the testimony of its driver of the incident about two miles before the accident when the truck seemed for an instant to go out of control and on the fact that the broken part to the housing, which was of considerable size, could not be found at the scene of the accident or within a distance of two miles back of the point of the accident to sustain the burden resting upon it to establish that the defective parts caused the accident. The argument that the temporary raising up of the rear part of the unit was caused by the break and the further point that the broken part of the housing could not be found at the scene of the accident or within two miles thereof would indicate that it broke somewhere else and prior to the accident is not without logic or reason." 202 F. 2d 52, at 54.

In *Harvester*, there was no impact or collision, as in our case, which might have accounted for breaking of the part in question.

More importantly, however, *Harvester* did not involve in any manner a directed verdict motion. In point of truth, the Tenth Circuit equated the evidentiary standard for testing the sufficiency of a jury verdict with the standard for determining whether the issue should be submitted to the jury. This equation is precisely the basis of my dissent and as enunciated in *Underwood* v. *Ferguson, supra.*

From the foregoing, I can only conclude that under Indiana law it was incumbent upon the court below to direct a verdict in favor of defendant. I would affirm.

NOTE.—Reported in 275 N. E. 2d 849.